SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

IMERCHANT INC.,                                     Index No. 659302/2024

           Plaintiff,

      -against-                                    **FIRST**
                                  **AMENDED COMPLAINT**

JP MORGAN CHASE & CO., and JP MORGAN
CHASE BANK, NA,

           Defendants.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

Plaintiff iMerchant Inc. ("Plaintiff"), by and through its attorneys, Romano Law PLLC,

files this First Amended Complaint against Defendants JP Morgan Chase & Co. and JP Morgan

Chase Bank, NA (collectively, "Defendants" or "Chase Bank"), and alleges as follows:

## NATURE OF THE CASE

1.      This action arises from Chase Bank's unlawful conversion of **$1,668,489.76**, which

rightfully belongs to Plaintiff, the fund's owner and bona fide purchaser for value.

2.      Chase Bank arbitrarily seized Plaintiff's funds which had been on deposit with

Chase Bank accounts belonging to Plaintiff, without providing any legal basis or authority to

justify it doing so.

Case 1:24-cv-09727    Document 1-2    Filed 12/17/24    Page 2 of 49

3.      Chase Bank has kept Plaintiff's funds in seizure for more than a year, and Plaintiff never received interest nor any official documentation from Chase Bank articulating the legal basis for such seizure.

4.      After Chase Bank eventually conceded that it had no legal justification to seize or hold Plaintiff's funds and agreed to return the funds to Plaintiff, it (i) suddenly transferred Plaintiff's $1,202,938.86 to a third party entirely unrelated and unknown to Plaintiff, and (ii) continues to hold Plaintiff's remaining funds of $465,550.90 in seizure without basis.

5.      As a result of its actions, Chase Bank breached its Deposit Account Agreement (DAA), intentionally exercised unlawful taking of Plaintiff's property, tortiously interfered with Plaintiff's client relationships, and negligently failed to maintain safe custody of Plaintiff's property, all in violation of New York State laws.

### PARTIES

6.      Plaintiff is a corporation organized and existing under the laws of the State of Delaware and has its principal place of business at 9 E 53rd Street, 5th Floor, New York, NY 10022.

7.      Defendant JP Morgan Chase & Co. is a global financial services firm and commercial banker.  It is incorporated under the laws of Delaware and maintains a principal place of business at 270 Park Avenue, New York, New York.

8.      Defendant JP Morgan Chase Bank, NA is a Delaware corporation with a principal place of business at 1 Chase Manhattan Plaza, New York, New York.  Chase Bank provides, among other things, commercial banking services.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction as the actions giving rise to Plaintiff's claims took place in New York County.

10.     This Court has personal jurisdiction over Defendants as their principal places of business are located in New York State and Defendants committed acts giving rise to the claims in New York County.

11.     Venue is proper in New York County pursuant to Defendants' Deposit Account Agreement, which states that any legal proceeding against Defendants must be in an appropriate court in the state where the customer's account is located.[1]  Plaintiff is the customer in this matter, and its account is located in New York State.

## FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF

12.     Plaintiff is a financial technology (fintech) company specializing in facilitating money transactions between contracting parties in the e-commerce space. Acting as an intermediary, Plaintiff processes and transfers funds, enabling exchanges such as bill payments and sundry online sales between its clients and their customers for a flat transaction fee of $35 - $45 per transaction.

13.     Plaintiff's operations are mostly in the e-commerce space facilitating payments for the trading of goods and services for over 500 clients online.  Plaintiff also has one client that runs a cryptocurrency platform for both businesses and individuals.  Plaintiff maintains Chase Bank accounts under its own name for use in processing transactions for its individual clients.

---

[1] A true and correct copy of Defendants' DAA is attached hereto as ***Exhibit A***.

3

14.     When customers want to buy products, e.g. cryptocurrency, they deposit funds into Plaintiff's Chase Bank account. Once the funds are received from a crypto buyer, Plaintiff facilitates the transfer of cryptocurrency to the customer and funds to the seller of the cryptocurrency.

15.     As a necessary part of its business, Plaintiff operates more than a dozen bank accounts at Chase Bank.

16.     For about five years it has entrusted Chase Bank with its clients' funds.

17.     On April 4, 2023, without explanation or warrant, Chase Bank reviewed several business account profiles belonging to Plaintiff and unilaterally placed a combined total of $1,668,489.76 in seizure (the "Seized Funds").[2]

18.     Chase Bank claimed that this action was necessary to validate third-party deposits and establish Plaintiff's association with one of its businesses.

19.     As further detailed below, Plaintiff provided Chase Bank with documentation substantiating its legitimate transactions, demonstrating that there had been fair value consideration exchanged between all parties involved.

20.     The first seizure was as follows: Chase Bank moved $4,097 into a seizure account for the account ending in 5652, claiming that the "account received a deposit for $497 on June 24, 2022, that was intended for Lululu Limited" and that Plaintiff "received a second deposit intended for the same payee for $3,600 on January 1, 2023 ("Seizure One").

21.     In response to Seizure One, Plaintiff submitted an invoice from Lululu Limited, evidencing that these funds had already been advanced to Lululu Limited by Plaintiff.

---

[2] Plaintiff's case number with Chase Bank is ECW240410-06344

4

Case 1:24-cv-09727    Document 1-2    Filed 12/17/24    Page 5 of 49

22.     Chase Bank then seized $100,000 when Plaintiff received a deposit for $100,000 intended for Plaintiff's client, Digifinex PTE L, followed by seizure of $1,000 intended for Digifinex Global Limit ("Seizure Two"). Again, the funds of Seizure Two had already been advanced to Digifinex by Plaintiff.

23.     Chase Bank then placed a combined balance of $360,453.90 in seizure for four of Plaintiff's accounts, stating that Chase Bank is not able to link Plaintiff's client's business with Plaintiff ("Seizure Three"). Chase Bank noted that to have the funds released, Plaintiff's client must provide the Secretary of State form confirming their relationship to the business and the dates they became linked with the business. Plaintiff complied.

24.     Plaintiff was notified by Chase Bank on June 4, 2024, that Chase Bank would be seizing $1,202,938.86 due to "active wire recalls" ("Seizure Four"). In response to Seizure Four, Plaintiff provided conclusive information that the wire recall is for funds that Plaintiff owned outright as innocent owner and bona fide purchaser for value.

25.     Nevertheless, Chase Bank held the Seized Funds and threatened to process returns back to the sending banks and other alleged undisclosed claimants without showing Plaintiff any claims filed by alleged claimants.

26.     Plaintiff engaged counsel, SGR law firm, who initially contacted Chase Bank on June 12, 2024 with details of the amounts seized and a request for information to initiate an investigation.

27.     Chase Bank requested additional information about the transactions on July 2, 2024.

28.     On that same day, Plaintiff, through its counsel, provided all requested information to Chase Bank.

29.     Plaintiff's counsel again reached out to Chase Bank on July 3, 2024, about the seizure of Plaintiff's Funds. Its counsel explained that Chase Bank has no legal or regulatory authority to hold Plaintiff's Funds for over a year, and that Plaintiff was a bona fide purchaser of value for the transactions at issue.

30.     Plaintiff's counsel then sent a follow up letter requesting an expedited decision regarding the Seized Funds on July 23, 2024.

31.     On August 1, 2024, Chase declined Plaintiff's request to release the Funds without any reasoning or basis.

32.     More than one year after its initial seizure of Seizures One, Two, and Three, Chase Bank notified Plaintiff that it intends to return the funds to Plaintiff's customers, rather than to Plaintiff, even though Plaintiff is the bona fide purchaser of value and lawful owner of the funds.

33.     There is a total balance of funds of $465,550.90 out of the $1,668,489.76 seized by Chase that it has not even bothered to allege misconduct or a claim of recall around, and yet the funds have remained seized by Chase almost two years now.

34.     Plaintiff retained undersigned new counsel who assisted the company in filing complaints against Chase Bank with New York's Department of Financial Services (NYDSF)[3] and the Office of the Comptroller of the Currency (OCC)[4] on September 19, 2024.

35.     Undersigned counsel wrote Chase Bank on September 19, 2024, stating a valid claim, informing Chase Bank of the NYDFS and OCC complaints, and demanding the immediate return of Seized Funds as rightfully belonging to Plaintiff.[5]

---

[3] NYDFS Case ID BKC-2024-01612162
[4] OCC Case ID CS0344912
[5] A true and correct copy of the September 19, 2024 letter provided to Chase Bank is attached hereto as ***Exhibit B***.

36.     Counsel further demanded that Chase Bank provide its rationale for the seizure and the legal grounds supporting the seizure.

37.     Counsel advised Chase Bank that pursuant to its DAA, any adverse claimant may appear in court to establish a claim, but that Chase has no legal basis for an extra judiciary conversion of the Seized Funds.

38.     Section H of Chase Bank's DAA states in relevant part:

> If there are conflicting instructions or there is any dispute regarding your account, we may take any action, including refusing to disburse any funds in the account to any person until all persons claiming an interest consent in writing to a resolution of the dispute; or a court of proper jurisdiction authorizes or directs the payment; or the person with a conflicting claim withdraws his or her claim in writing. We may also place funds in a court… for resolution.

39.     Plaintiff informed Chase Bank that it should respect its own DAA by not disbursing the Seized Funds without consent of Plaintiff or a court order.  Further, if Chase Bank insists on giving Plaintiff's money to another party, that Chase Bank provide the date thereof so that Plaintiff may file an injunction against Chase Bank in court.

40.     Plaintiff requested that in the alternative, that Chase Bank promptly return to Plaintiff $465,550.90—the amount not addressed by Chase—and formally seize the remainder of the Seized Funds and transfer them over to the Department of Justice, Secret Service, or other competent authority so that Plaintiff can file a claim challenging the seizure in court.

41.     Chase Bank responded in a letter dated October 4, 2024 admitting that (1) Chase is still in custody of Plaintiff's Funds, (2) that the "matter continues to be under review" one year after an unlawful seizure, and (3) that there is no warrant supporting the seizure.

42.     Nothing in Chase Bank's October 4, 2024 correspondence provided a legal basis for continuing to exercise this unlawful seizure over even a penny of Plaintiff's funds.

7

43.     Undersigned counsel followed up with a second letter dated October 23, 2024 as a final demand for release of the Seized Funds and (1) gave Chase one more week release the funds and (2) served Chase copies of Plaintiff's filed complaints with Federal and State regulators regarding the unlawful seizure.

44.     Chase Bank claimed that Seizure Four (in the amount of $1,202,938.86) was based on its receipt of another unrelated federal government warrant thus undersigned counsel engaged directly with the federal government to get those funds released.

45.     On November 13, 2024, the federal government found no basis to continue to hold the funds and agreed to release them directly to Plaintiff.  Undersigned counsel informed Chase Bank of the same.

46.     On November 18, 2024, the Chase Bank Executive Office representative in charge of Plaintiff's claim informed Plaintiff's counsel that Chase Bank would be returning the entirety of the funds of Seizure Four to Plaintiff (the "Wired Funds") within two to three business days.

47.     Chase Bank confirmed that the $1,202,938.86 was comprised of three wire transactions previously sent to Plaintiff and seized directly by Chase Bank from Plaintiff's bank account without warrant or cause.

48.     The Chase Bank Executive Office representative mentioned Fidelity wire instructions it had on file to return the Wired Funds.

49.     However, Plaintiff does not have any association with a Fidelity account, and Plaintiff's counsel informed Chase Bank of the same.  Upon such notice, Chase Bank on November 18, 2024, claimed it had urgently intercepted the Fidelity wire transfer to stop the transaction from occurring.

8

Case 1:24-cv-09727    Document 1-2    Filed 12/17/24    Page 9 of 49

50.     Thereafter, Plaintiff's counsel cooperated with the Chase Bank Executive Office to facilitate the transfer of the Wired Funds to Plaintiff, either by reopening Plaintiff's previously closed Chase Bank account for the deposit or, alternatively, by routing the funds through Plaintiff's attorneys' trust account.

51.     During these discussions, the Chase Bank Executive Office representative handling the matter indicated that he would consult internally to arrange the direct transfer of the Wired Funds to Plaintiff.

52.     On November 20, 2024, Chase Bank, despite being fully aware that the Fidelity account did not belong to Plaintiff, unilaterally and without prior notice to Plaintiff or its counsel, confirmed that the Wired Funds had been sent to the unidentified Fidelity account on dates undisclosed and thereafter ceased all cooperation with Plaintiff's counsel.

53.     In a letter dated November 22, 2024, Chase Bank informed Plaintiff's counsel that it continues to hold the remaining $465,550.90 of Plaintiff's funds in brazen illegal seizure.  The letter glaringly fails to cite any legal basis or authority for this seizure.

54.     Chase Bank is refusing to take any further action with respect to both the Wired Funds and all other Seized Funds belonging to Plaintiff, leading to the commencement of this action.

## AS AND FOR A FIRST CAUSE OF ACTION
## BASED ON BREACH OF CONTRACT

55.     Plaintiff incorporates each and every allegation made above as if fully restated and set forth herein.

56.     Chase Bank is a party to the Deposit Account Agreement, which it produces to its banking clients.

9

57.     The Deposit Account Agreement requires that any adverse claims be litigated according to its terms.

58.     By refusing to follow its own procedure set forth for adverse claimants of disputed funds, Chase Bank has breached the Deposit Account Agreement.

59.     As an actual and proximate result of Chase Bank's breach of its contractual obligations, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $1,668,489.76 plus pre- and post-judgment interest, awardable attorney's fees and costs.

### AS AND FOR A SECOND CAUSE OF ACTION
### <u>BASED ON CONVERSION</u>

60.     Plaintiff incorporates each and every allegation made above as if fully restated and set forth herein.

61.     Pursuant to the Deposit Account Agreement, Plaintiff established accounts with Chase Bank.

62.     Plaintiff entrusted Chase Bank with more than a dozen of its client accounts.

63.     These accounts are property interests of Plaintiff.

64.     Chase Bank intentionally exercised unlawful domain over Plaintiff funds.

65.     Pursuant to the Deposit Account Agreement, Plaintiff has the right to receive its funds upon demand.

66.     However, Chase Bank has interfered with Plaintiff's accounts and exercise and continue to exercise control of the Seized Funds after several demand made over one year.

67.     Further, Chase Bank wired $1,202,938.86 of Plaintiff's funds into an unknown account, not belonging to Plaintiff.

10

68. As a direct and proximate result of this interference, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $1,668,489.76 plus pre- and post-judgment interest, awardable attorney's fees and costs.

**AS AND FOR A THIRD CAUSE OF ACTION**
**TORTIOUS INTERFERANCE WITH CONTRACT**

69. Plaintiff incorporates each and every allegation made above as if fully restated and set forth herein.

70. Plaintiff has valid and existing contracts with its clients, who rely on Plaintiff to effectuate business sales with its customers.

71. Chase Bank has knowledge of such contractual relationships, as it was advised of the business relationship in Plaintiff's counsel's correspondences.

72. Nevertheless, Chase Bank unilaterally decided to suspend and unlawfully seize Plaintiff's funds.

73. This has led to Plaintiff having to lose the benefit of certain contracts between itself and its clients.

74. As a direct and proximate result of this interference, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $1,668,489.76 plus pre- and post-judgment interest, awardable attorney's fees and costs.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**BASED ON NEGLIGENCE**

75. Plaintiff incorporates each and every allegation made above as if fully restated and set forth herein.

76. Pursuant to the Deposit Account Agreement, Plaintiff established accounts with Chase Bank.

11

77.     Plaintiff entrusted Chase Bank with more than a dozen of its accounts.

78.     Chase Bank had a duty to safekeep Plaintiff's funds.

79.     Chase Bank also had a duty to keep Plaintiff notified of actions it has been taking with Plaintiff's various accounts.

80.     Despite Plaintiff's counsel repeatedly requesting justification for the actions taken regarding the Seized Funds, Chase Bank has consistently failed to provide any explanation.

81.     Chase Bank also accidentally wired $1,202,938.86 of Plaintiff's funds to a third-party account unaffiliated with Plaintiff, despite Plaintiff warning and Chase Bank's knowledge of the same.

82.     As a direct and proximate result of Chase Bank's breaches of its duties owed to Plaintiff, Plaintiff has suffered damages in an amount to be determined at trial, but no less than $1,668,489.76 plus pre- and post-judgment interest, awardable attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court issue an order entering judgment in its favor, and against Defendants as follows,

(a) on the first cause of action for breach of contract, awarding Plaintiff damages in an amount to be determined at trial but no less than $1,668,489.76, plus pre- and post-judgment interest, awardable attorney's fees and costs;

(b) on the second cause of action for conversion, awarding Plaintiff damages in an amount to be determined at trial but no less than $1,668,489.76, plus pre- and post-judgment interest, awardable attorney's fees and costs;

(c) on the third cause of action for tortious interference with contract, awarding Plaintiff damages in an amount to be determined at trial but no less than $1,668,489.76, plus pre- and post-judgment interest, awardable attorney's fees and costs;

(d) on the fourth cause of action for negligence, awarding Plaintiff damages in an amount to be determined at trial but no less than $1,668,489.76, plus pre- and post-judgment interest, awardable attorney's fees and costs;

(e) an order enjoining Defendants from further interference with Plaintiff's business relationships or funds, except to pay such funds over to Plaintiff or the court so that alleged claimants, if any, may assert their legal claims in the proper forum;

(f) exemplary damages against Defendants for brazen and malicious conversion of Plaintiff's property; and

(g) ordering or awarding Plaintiff attorney fees and such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: December 6, 2024

BY: _____

Uzoma Alexander Eze, Esq.
Danielle Yurkew, Esq.

ROMANO LAW PLLC
One Battery Park Plaza, Floor 7
New York, NY 10004

*Attorneys for Plaintiff*

13

# EXHIBIT A

# DEPOSIT ACCOUNT AGREEMENT AND PRIVACY NOTICE

# CHASE ◉

## Thank you for choosing Chase

This is your Deposit Account Agreement (may also be referred to as Account Rules and Regulations), or contract, with us.

We recommend keeping this agreement but we regularly update it, so you can always get the current agreement at chase.com, a branch or by request when you call us.

The Deposit Account Agreement also includes these separate documents that pertain to our personal and business accounts:

- Rates for interest-bearing accounts
- Personal accounts:
  - Additional Banking Services and Fees (including our Fee Schedule)
- Business accounts:
  - Additional Banking Services and Fees (including our Fee Schedule)
- Any additional disclosures, such as amendments or agreements, that we provide to you either when you open your account or when we change the terms of your account.

## How to Contact Us

We're here for you. See below for how to reach us.

**Personal Accounts:**

| | |
|---|---|
| Main phone number: | 1-800-935-9935 |
| Spanish: | 1-877-312-4273 |
| International calls: | 1-713-262-1679 |
| Website: | chase.com |

**Business Accounts:**

| | |
|---|---|
| Main phone number: | 1-800-242-7338 |
| Spanish: | 1-888-622-4273 |
| International calls: | 1-713-262-1679 |
| Website: | chase.com/business |

**Chase Private Client:**

| | |
|---|---|
| Main phone number: | 1-888-994-5626 |
| International calls: | 1-405-235-4847 |
| Website: | chase.com/privateclient |

**Chase Mobile or Online Banking:** 1-877-242-7372

**Deaf and Hard of Hearing:** We accept operator relay calls

**Electronic Funds Transfers (EFTs):**

In case of errors or questions about your EFTs, or if you believe your debit card has been lost or stolen, call us at 1-866-564-2262 or write:

Chase
PO Box 659809
Internal Mail TX3-7849
San Antonio, TX 78265-9109

**To Dispute Information Reported to a Consumer Reporting Agency:**

JPMorgan Chase Bank, N.A.
PO Box 182108
Internal Mail OHW-1000
Columbus, OH 43218

**All Other Written Correspondence:**

JPMorgan Chase Bank, N.A.
PO Box 44945
Indianapolis, IN 46204-4945

# Deposit Account Agreement Table of Contents

**I. Definitions** .................................................................................................................................................5

**II. Opening Your Account** ...........................................................................................................................5

  **A.** Personal Accounts ..............................................................................................................................5
    **1.** Solely owned account .....................................................................................................................5
    **2.** Joint accounts ...................................................................................................................................5
    **3.** "Payable on death" account ...........................................................................................................6
    **4.** "In trust for" (informal trust) account ..........................................................................................6
    **5.** Convenience account ......................................................................................................................6
    **6.** Power of attorney .............................................................................................................................6
    **7.** Supported decision-making agreement .......................................................................................6
    **8.** Uniform Transfers to Minors Act/Uniform Gifts to Minors Act (UTMA/UGMA) account ........7
    **9.** Representative payee/VA custodian account ...............................................................................7
    **10.** Other fiduciary accounts ...............................................................................................................7

  **B.** Business Accounts ...............................................................................................................................7

**III. Using Your Checking or Savings Account** .......................................................................................7

  **A.** Adding Money to Your Account .........................................................................................................7
    **1.** Direct deposits; notice of electronic deposits .............................................................................7
    **2.** Endorsements ...................................................................................................................................7
    **3.** Endorsement requirements ............................................................................................................8
    **4.** Our rights and responsibilities for deposits .................................................................................8
    **5.** Our right to charge back deposited or cashed items ...................................................................8
    **6.** Transaction records and receipts ...................................................................................................8
    **7.** Night depository and large cash deposits ....................................................................................8
    **8.** Depositing remotely created checks ..............................................................................................8

  **B.** Posting Order and Processing ...........................................................................................................8
    **1.** Posting order ....................................................................................................................................8
    **2.** "Pending" transactions ...................................................................................................................9

  **C.** Overdrafts, Fees and Overdraft Protection ....................................................................................9
    **1.** Paying transactions presented against insufficient funds .........................................................9
    **2.** Your responsibility to repay overdrafts ........................................................................................9
    **3.** Overdraft Fees ...............................................................................................................................10
    **4.** Overdraft Protection .....................................................................................................................10

  **D.** Electronic Funds Transfer Service Terms; Payments, Deposits and Transfers You Make or Receive by Electronic Methods ...................................................................................................................10
    **1.** Types of EFT services ....................................................................................................................10
      **a.** Debit and ATM cards .................................................................................................................10
      **b.** Electronic transfers using your account number ...................................................................11
      **c.** Online banking and Chase Mobile ..........................................................................................11
      **d.** Telephone banking ...................................................................................................................11
      **e.** Transfers for Overdraft Protection ..........................................................................................11
    **2.** Important information and agreements about your card .........................................................11
      **a.** Authorizations and holds .........................................................................................................11
      **b.** Overdrafts with your card .........................................................................................................11
      **c.** Canceling your card ..................................................................................................................11
      **d.** Our right to refuse transactions ..............................................................................................12
      **e.** Foreign exchange transactions ...............................................................................................12

**f.** Debit or credit prompts at terminals...................................................................... 12

**g.** ATM safety and safeguarding your account information ....................................... 12

**3.** Daily dollar limits on ATM withdrawals and card purchases....................................... 12

**4.** Receipts and statements............................................................................................. 12

**5.** In case of errors or questions about your electronic funds transfers ........................ 13

**6.** Our liability for failure to complete transactions...................................................... 13

**7.** Preauthorized (recurring) transfers and stop payments ........................................... 13

**8.** Disclosure of account information to third parties .................................................... 14

**9.** Notice of your rights and liabilities............................................................................ 14

**10.** Fees......................................................................................................................... 14

**11.** Services not covered by this part; separate agreements ........................................ 14

**E.** Other Ways to Use Your Money..................................................................................... 14

**1.** When you can withdraw funds you've deposited ...................................................... 14

**2.** Withdrawals and transfers from your account .......................................................... 14

**3.** Transactions in a foreign currency ........................................................................... 15

**4.** Large cash withdrawals............................................................................................. 15

**5.** Stop payments on a check......................................................................................... 15

**6.** Account numbers on funds transfers......................................................................... 15

**7.** Savings account withdrawals .................................................................................... 15

**8.** Our right to require advance notice of withdrawals.................................................. 16

**9.** Check cashing............................................................................................................ 16

**10.** Incomplete, future-dated, conditional or stale-dated checks................................ 16

**11.** Multiple signatures.................................................................................................. 16

**12.** Facsimile signatures................................................................................................ 16

**13.** Review of checks and signatures............................................................................. 16

**14.** Substitute Checks and Your Rights ......................................................................... 16

**IV. Funds Availability Policy** ............................................................................................. **17**

**V. Safeguarding Your Information** ...................................................................................... **18**

**A.** Checks and Other Documents You Use .......................................................................... 18

**B.** Protecting Your Checks.................................................................................................. 18

**C.** Review Your Account Statements for Checks and Other Errors ...................................... 18

**VI. Managing and Maintaining Your Account** ..................................................................... **18**

**A.** Interest on Checking and Savings Accounts ................................................................... 18

**B.** Linking Your Accounts; Statements ............................................................................... 19

**1.** Linked accounts ......................................................................................................... 19

**2.** Statements and notices ............................................................................................. 19

**3.** Combined statements ................................................................................................ 19

**4.** Options for receiving checks ...................................................................................... 19

**C.** Telephone and Electronic Communication..................................................................... 19

**D.** Fees for Your Account.................................................................................................... 20

**E.** Setoff and Security Interest........................................................................................... 20

**F.** Account Alerts................................................................................................................ 20

**VII. Maintaining Your Certificate of Deposit (CD) Account**................................................ **20**

**VIII. Closing Your Account**.................................................................................................. **21**

**IX. Other Legal Terms**................................................................................................................**22**

    **A.** Rules Governing Your Account.........................................................................................22

    **B.** General Liability...............................................................................................................22

    **C.** Restricting Your Account; Blocking or Delaying Transactions............................................22

    **D.** Changes to the Agreement................................................................................................22

    **E.** Our Responsibility to Obtain Personal Information.............................................................23

    **F.** Prohibited Activities and Tax Reporting............................................................................23

    **G.** Death or Incompetence of Account Owner or Sole Signer..................................................23

    **H.** Adverse Claims................................................................................................................23

    **I.** Authorization to Share Information...................................................................................23

    **J.** Disputing Information Reported to a Consumer Reporting Agency.....................................23

    **K.** Legal Process and Requests for Information......................................................................24

    **L.** Abandoned Property........................................................................................................24

    **M.** English Language – Other Language Preferences.............................................................24

    **N.** Referrals.........................................................................................................................24

    **O.** Special Provisions for Pass-Through Accounts..................................................................24

    **P.** Sub-accounts..................................................................................................................24

    **Q.** Permitted Time for Filing a Lawsuit.................................................................................25

    **R.** Location of Legal Proceedings.........................................................................................25

    **S.** Pre-judgment Interest Rate..............................................................................................25

    **T.** Assignment of Agreement and Successors........................................................................25

    **U.** No Waiver.......................................................................................................................25

    **V.** Employee Retirement Income Security Act (ERISA)..........................................................25

**X. Arbitration; Resolving Disputes**...............................................................................................**25**

## *Privacy Notice*

# Deposit Account Agreement

This agreement is the contract that governs your account.

Whether you have a personal or business deposit account, this document is the basic agreement between you and us (JPMorgan Chase Bank, N.A. or "Chase"). By signing a signature card or submitting an account application, or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement. Customers of some of our business groups, such as Corporate Banking, will get a different agreement and their accounts will be governed by that agreement, not this one. If you have a product that is not a deposit account, such as a credit card, this agreement does not apply to that product. Also, other products or services, such as online banking or retirement accounts, may have additional agreements. In the event of an irreconcilable conflict between the terms of this agreement and any applicable Chase agreements, the terms of this agreement will control, unless otherwise explicitly stated.

This agreement also refers to and includes other disclosures we may provide to you, including (1) product information, (2) rate information, (3) banking services and fees, and (4) other disclosures, agreements, and amendments that we may provide to you. All may contain information on fees that apply to your accounts. Products and services as well as associated fees, charges, interest rates and balance requirements may differ among different geographic locations. Not all products and services, including check cashing, are offered at all locations.

## I. Definitions

Here are some important terms that we use throughout this agreement:

**Account:** Any deposit account, such as a checking or savings account, you have with us that is covered by this agreement.

**ACH (Automated Clearing House):** ACH, which may also be referred to as automatic payments, are funds transferred to or from your account through an automated clearing house network. Common examples include direct deposits of payroll, tax refunds, government benefits, and pensions.

**ATM (Automated Teller Machine):** An electronic device that performs many banking services, which can include withdrawals and balance inquiries.

**Available balance:** The amount of money in your account that you can use right now. You can find this balance on receipts you receive at ATMs, from a banker at a branch, on chase.com or Chase Mobile.

Here's how we calculate your available balance: We start with your previous end of day balance,
• Add any pending credit transactions,
• Subtract any pending debit transactions, deposits that are not available yet for withdrawal, and any holds on your account.

**Business day:** Every day except Saturdays, Sundays and federal holidays. Some branches may close on a business day due to an emergency or to observe a state holiday.

**Check:** A written order to pay a specific amount of money drawn on, payable through, payable at or processed by a bank or other depository institution. If a check is sent or returned as an electronic image or as a substitute check, it is still considered a check.

**Debit card transaction:** Any purchase or bill payment using your debit card. A debit card transaction may be either an everyday (not recurring) purchase transaction or a recurring payment, such as a monthly bill.

**Direct deposit:** An automatic electronic deposit made through the ACH network to your account by someone else, such as an employer issuing payroll or a government paying benefits.

**Transaction (may also be referred to as item):** Any check, ACH, funds transfer, online banking transaction, wire transfer, teller cash withdrawal, ATM withdrawal, debit card purchase, fee, charge or other instruction for an amount to be added to or subtracted from your balance, whether or not we pay or settle the transaction.

**Overdraft:** The amount by which any transaction(s) would exceed the balance in your account either when it is authorized or presented for settlement during our nightly processing. If your account has a negative balance it is considered to be overdrawn.

**PIN:** A four-digit personal identification number that you either select or request from us for your debit or ATM card. Some merchants and all ATMs require a PIN when you use a debit card.

**Present balance:** The total amount of money recorded in your account, including funds not yet available for you to use. This includes pending transactions, authorization holds that are not yet posted or deposits that have not yet been made available. You can find this balance on receipts you receive at ATMs, from a banker at a branch, on chase.com or Chase Mobile.

## II. Opening Your Account

### A. Personal Accounts

THE TYPE OF ACCOUNT OWNERSHIP MAY DETERMINE HOW YOUR FUNDS ARE PAID IF YOU DIE, EVEN IF YOUR WILL STATES OTHERWISE. PLEASE CONSULT YOUR ESTATE PLANNING ADVISOR OR ATTORNEY ABOUT YOUR CHOICES.

If your account is a type listed under "Personal Accounts" in our product information, you agree not to use it for business purposes. Ownership of your account is determined by the most current signature card. However, we are authorized to rely on the account ownership information contained in our deposit system unless we are notified that the most current signature card and the deposit system contain different information.

#### 1. Solely owned account

When only one individual is listed as the owner of an account, we will treat the account as a solely owned account.

#### 2. Joint accounts

When two or more people are listed as owners of a personal account, the account is a "joint account" and each owner is a "joint owner."

Each joint owner has complete control over all of the funds in the account.

If your joint account becomes overdrawn, each joint owner is liable for the full amount the account is overdrawn, regardless of who initiated or benefited from the activity that caused the overdraft.

If one joint owner requests that we not pay transactions initiated by a different joint owner, we may block the account, but we are not required to do so. That means we will refuse to pay all transactions, including transactions initiated by the owner making the request. If we block the account, we may not release the block unless all joint owners agree in writing to remove it. No request to block the account will affect transactions that we paid before the request. If we decide not to block the account, all joint owners remain responsible for transactions subtracted from the account.

Any joint owner may close the account without the consent from any other joint owners. We may choose whether or not to act upon other instructions of any joint owners, including adding another owner to the account, without the authorization of the other joint owners. We may also pay all or any part of the funds in the joint account to a court or government agency if we receive a garnishment, levy or similar legal process that identifies any of the joint owners.

### Joint account with rights of survivorship
If a joint account has rights of survivorship, and one joint owner dies, the account ownership will be transferred to the surviving joint owners. The estate of the deceased owner will have no rights to the account. If there is more than one surviving joint owner, the account will continue as a joint account with rights of survivorship among the remaining owners. If an account is designated "JAWROS" or "JTWROS," it has rights of survivorship.

### Joint account with no right of survivorship (also called "tenants in common")
If a joint account does not have rights of survivorship, and one joint owner dies, that owner's interest passes to the owner's estate. Either the surviving joint owners or the deceased owner's estate may withdraw the funds at any time, and we have no responsibility for determining the respective interests of the owners. If an account is designated "Tenants in common" or "JTIC," it does not have rights of survivorship.

### When survivorship rights apply
Except as otherwise stated in this paragraph, a joint account has rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created without these rights. Accounts in Louisiana do not have rights of survivorship. Accounts in Texas do not have rights of survivorship unless you clearly indicate on the signature card and in the account title that the account is created with these rights.

If a joint account also contains a "payable on death" or "in trust for" designation, the account always includes a right of survivorship and is payable to the beneficiary only upon the death of the last surviving owner, except as stated in the paragraph below.

### Marital account (Wisconsin only)
If one owner of a marital account dies, the survivor is entitled to 50% of the account funds and the estate of the deceased is entitled to the other 50%. If a marital account contains a payable on death designation, the POD beneficiary is entitled to the deceased spouse's 50% share. However, we have no responsibility to determine the respective interests of the owner and the POD beneficiary.

### Tenants by the entirety (Florida only)
A Florida joint account owned solely by two spouses is a "tenants by the entirety" account unless the signature card indicates otherwise. We are not required to determine whether an account is a tenants by the entirety account before responding to a garnishment or other legal process. We may assert our right of setoff or security interest in a tenants by the entirety account in order to collect debts of either owner.

## 3. "Payable on death" account
If you establish your account payable on death to one or more beneficiaries, the account is a "POD" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer POD accounts in all states.

## 4. "In trust for" (informal trust) account
If you establish your account as in trust for ("ITF") or as trustee for one or more beneficiaries without presenting formal trust documents, we may treat the account as an "ITF" account. If we receive proof you've died, we will pay the balance of the account to the beneficiary or beneficiaries you designated. Multiple beneficiaries will be paid in equal shares unless the signature card provides otherwise. We do not offer ITF accounts in all states.

## 5. Convenience account
If you have a convenience account, you are its sole owner, but you authorize an additional signer to write checks or authorize other transactions. You are solely responsible for the actions of the additional signer (legacy accounts only).

## 6. Power of attorney
A power of attorney is a document you sign that authorizes someone else, called the agent, to act on your behalf. If you sign a power of attorney, the agent can sign on your behalf and do anything you could do regarding the account, including withdrawing or spending all of the money in the account. Do not sign a power of attorney unless you trust the agent to act in your best interest. If you choose to add an agent, you must provide a power of attorney form that we agree to accept. We may rely on a copy of an original power of attorney. We are not required to investigate the facts relating to any power of attorney provided to us on your behalf, including whether your signature on the power of attorney is authentic or whether the agent continues to have authority. We may follow or refuse to follow the agent's instructions at any time, including if we suspect fraud or abuse on your account, unless state law requires otherwise. We may also refuse an agent's request to become a joint owner or a beneficiary of an account, but we have no liability to anyone if we do so. We have no liability when we follow or refuse to follow any instructions from an agent, for example, if your agent misuses the authority you have given them. An agent's power of attorney on an account is terminated when the account owner dies.

## 7. Supported decision-making agreement
In certain states you can name a supporter to assist you in understanding the information, responsibilities and consequences of your financial decisions. This is done through a supported decision-making agreement, which is an agreement between you and a supporter that is entered into so the supporter can assist with gathering information for you to make decisions about your account.

A supporter is a person that is named by you in a supported decision-making agreement. A supporter may not transact on your account; however, a supporter may request and be provided with account information, such as statements or copies of checks. A supporter may also communicate decisions made by you.

### 8. Uniform Transfers to Minors Act/Uniform Gifts to Minors Act (UTMA/UGMA) account

The designated minor is the owner of the funds in the account; including any funds transferred into the account are irrevocably owned by the minor. UTMA/UGMA accounts can't be pledged as collateral for a personal loan to you, nor can checks be cashed against it.

If you are the custodian or successor custodian of an account under a state's UTMA/UGMA, you agree to manage and use the account in accordance with your obligations under applicable state law, including:

- Using the account for the exclusive use and benefit of the minor, and
- Transferring assets to the beneficiary at the age when the UTMA/UGMA terminates

It is your responsibility as custodian to consult your own legal or tax advisor about the governing state law.

At our sole discretion we may limit transactions on the account if you fail to transfer funds to the beneficiary as required by applicable law. You agree, on your own behalf and on behalf of the minor, to indemnify and hold us harmless from any and all liability, including from any claim by the beneficiary, for following any instructions with respect to the account.

### 9. Representative payee/VA custodian account

If you open an account as a "representative payee" for someone who receives Social Security payments, or as a legal custodian, spouse payee or other custodian for someone who receives Veterans Administration payments, you agree not to permit any deposits to the account other than the designated payments. We are not required to determine whether you deposit other funds or whether any debits from the account are for the support of the person for whose benefit the funds are paid. This person is called the beneficiary. If the beneficiary dies, you must promptly notify us and stop all further deposits to and withdrawals from the account. If the government demands that we return deposits made after the beneficiary's death and the account does not have enough funds to pay the demand, we may take the funds from any account you or the beneficiary owns.

### 10. Other fiduciary accounts

If you open an estate account, trust account, guardianship or conservatorship account, or other similar type of account, we reserve the right to require any documents we reasonably request to satisfy us that you are authorized to open and use the account, including withdrawing the funds. We do not have to permit any withdrawal from the account until we receive all requested documents. We have no fiduciary duties to you as the trustee, executor, guardian or conservator, or to the beneficial owners of the account.

### B. Business Accounts

If your account is a type listed under "Business Accounts" in our product information, you agree not to use it for personal purposes.

If our records list a business organization as the owner of an account, the account is payable to the business organization and not to any individual director, shareholder, member or partner. "Business organization" means a corporation, unincorporated association, limited liability company, partnership, or any other business, government or non-profit organization. We may rely on the accuracy and completeness of all resolutions, signature cards and other documents you deliver to us in connection with the account. If they state that a person is authorized to sign checks or otherwise initiate transactions on your account, that person is called a signer.

If the account owner is a sole proprietorship, that means that one person conducts the business as his or her own property, instead of through a business organization. A sole proprietor may also designate signers by appropriate documents. We may in some states allow a married couple to open an account as a sole proprietorship.

If you change your form of ownership or authorized signers, you must notify us when the change occurs.

A signer is authorized to endorse checks payable to the business. Endorsements "for deposit" may be written or stamped. A signer is also authorized to sign checks drawn on your account. We are authorized to pay checks without asking how the checks were issued or how the proceeds will be used, even if the check is payable to the person who signed the check.

A signer is authorized to instruct us to close accounts or do anything else involving any account, and to sign any agreements or documents relating to accounts or other business. We may, although we are not required to, cash checks payable to or accept "less cash" deposits from a business organization.

If you open an attorney trust account, including an IOLTA or similar account, you authorize us to notify the appropriate state agency if the account is overdrawn or checks are dishonored, if the applicable state requires notice of those events.

## III. Using Your Checking or Savings Account

### A. Adding Money to Your Account

### 1. Direct deposits; notice of electronic deposits

When we receive an electronic deposit to your account, the only notice you will receive from us is on your next statement. You may visit chase.com or Chase Mobile® and use Account Alerts, or call us to confirm that we have received a deposit.

If the bank that sent an electronic deposit to your account tells us it was a mistake, or was intended for another customer or account, we may deduct the amount from your balance without investigating.

### 2. Endorsements

An endorsement is a signature, stamp or other mark made on a check to transfer the check to another person. If a check you deposited doesn't have your endorsement, we may endorse it for you or treat the check as if we had endorsed it. Either way, the effect will be as if you had endorsed the check. Also, any deposited check that appears to contain your stamped or facsimile endorsement will be treated as if you had actually endorsed it. We are not bound by any conditional or restrictive endorsements on a check you cash or deposit, or by any endorsement "without recourse."

### 3. Endorsement requirements

To help ensure that checks you deposit or cash will be processed timely, your endorsement (and any other endorsement supplied by a co-payee) must be in the 1½ inch area that starts on the right side as viewed from the back. Payee or customer information must not be on any other part of the back of the check.

If you don't endorse your check properly and it causes us a loss, cost or expense, you have to pay that amount to us.

### 4. Our rights and responsibilities for deposits

If you deposit or cash a check, or we send one for collection, we act only on your behalf. Our only responsibility is to exercise reasonable care. If we lose a check, you agree to use reasonable efforts to help us locate or replace it.

We will not be liable for the lack of care of any bank or third party we use to collect checks, or for checks lost during shipping. We may send checks to any bank or to the entity on which the check was written in our customary manner. We may have agreements with other banks regarding times and methods for collecting or returning items.

We may refuse a deposit, or part of a deposit, at any time. We also may refuse a deposit after initially accepting it. We can reverse any amount we have added to your balance for a deposited check and send the check on a collection basis even after we have taken physical possession of the check. We will not be liable to you for refusing a deposit, even if it causes us to decline any transactions you have already made.

If we refuse a deposit, we may take a check on a "collection basis," which means we will not add funds to your balance until we have actually been paid for the check. If we process any check deposit on a "collection basis," we will not add funds to your balance until we have actually been paid for the check by the other bank.

If the other bank charges us a collections or processing fee for any item, we will deduct that from your account or the amount credited to you. These charges or fees will be assessed even if the other bank does not pay us for the check or the funds have already been deposited to your account.

### 5. Our right to charge back deposited or cashed items

If you deposit or cash a check or other item and (1) the paying bank returns it to us unpaid; (2) the paying bank or the issuer of a check demands that we repay them because the check was altered, forged or unauthorized, is missing a signature or endorsement, or has a forged endorsement; or (3) the sending bank or the originator of an item demands that we return the item because it was unauthorized, sent to the wrong account number or procured by fraud, we may pay the return or demand, and subtract the funds from the balance in your account or in other accounts for which you are an owner, or charge part of the item to each, even if you have already withdrawn the funds. If we have reason to believe that any of the events in the previous sentence has occurred or may occur or that the check or other item should not have been paid or may not be paid for any other reason, we may place a hold on the funds or move them to a non-customer account until we determine who is entitled to them.

### 6. Transaction records and receipts

We may rely on the account number on any deposit slip, payment instruction, or similar record we receive, even if that account number is associated with a name that's different from the name you've provided. It's not our responsibility to detect any inconsistency between the account number you provide and the name.

If you make a deposit, we may provide a receipt, but the amount on your deposit receipt is based entirely on the deposit slip you complete. We may confirm the funds you deposit and, after review, may adjust your account for any errors including any errors on your deposit slip.

We are permitted to adjust (debit or credit) your account, and we may notify you, if we:

- Determine a discrepancy exists between the declared and the actual amount of the funds in your account, or
- Misdirected a transaction to or from your account or made a transaction that we reasonably believe to be in error.

If we give you a receipt for a CD that you decide not to open or we give you a receipt for a deposit that you then cancel, the receipt is void and you may not claim those funds.

### 7. Night depository and large cash deposits

Any of our employees may open and count any deposit that a branch banker didn't count in front of you, including night depository deposits and large cash deposits, and you agree not to dispute that employee's determination of the amount you deposited.

If you use our night depository, you are responsible for any disappearance, theft or loss of any envelope, bag or money before we issue a written receipt for the deposit.

### 8. Depositing remotely created checks

A remotely created check is created by the payee and not signed by the account owner. It states that the account owner authorized the check. If you deposit a remotely created check, you guarantee it was authorized by the account owner for payment in the amount it shows.

## B. Posting Order and Processing

### 1. Posting order

Posting order is the order in which we apply deposits and withdrawals to your account. We provide you with visibility into how transactions are posted and in what order to help you better manage your account.

When we transition from one business day to the next business day we post transactions to and from your account during our nightly processing. The order in which we generally post transactions during nightly processing for each business day is:

- First, we make any previous day adjustments, and add deposits to your account.
- Second, we subtract transactions in chronological order by using the date and time of when the transaction was authorized or shown as pending. This includes ATM and Chase banker withdrawals, transfers and payments; automatic payments; chase.com or Chase Mobile online transactions; checks drawn on your account; debit card transactions; wire transfers; and real time payments. If multiple transactions have the same date and time, then they are posted in high to low dollar order.

- There are some instances where we do not have the time of the transaction therefore we post at the end of the day the transaction occurred:
  - We are unable to show the transaction as pending; or
  - We don't receive an authorization request from the merchant but the transaction is presented for payment.
- Third, there are some transactions that we cannot process automatically or until we've completed posting of your chronological transactions. This includes Overdraft Protection transfers or transfers to maintain target balances in other accounts. We subtract these remaining transactions in high to low dollar order.
- Finally, fees are assessed last.

If you review your account during the day, you will see that we show some transactions as "pending." For details, refer to the section *"Pending" transactions*. These transactions impact your available balance, but have not yet posted to your account and do not guarantee that we will pay these transactions to your account if you have a negative balance at that time. We may still return a transaction unpaid if your balance has insufficient funds during that business day's nightly processing, even if it had been displayed as a "pending" transaction on a positive balance during the day. If a transaction that you made or authorized does not display as "pending," you are still responsible for it and it may still be posted against your account during nightly processing.

## 2. "Pending" transactions

Throughout the day we post debits and credits to your account that may appear as "pending" when we become aware of the transaction. The following are the most common types of debit transactions that may appear as "pending" and reduce your available balance by the amount of the transaction:

- ATM and Chase Banker Withdrawals, Transfers and Payments
- Automatic Payments
- Chase.com or Chase Mobile Online Transactions
- Checks Drawn on Your Account
- Debit Card Transactions
- Wire Transfers

**ATM and Chase Banker Withdrawals, Transfers and Payments:** For payments or cash withdrawals, we will apply the transactions and update your available balance as soon as the transaction is complete.

**Automatic Payments (ACH transactions):** We will generally apply debit transactions against your available balance as pending at the start of the business day of the effective date of the payment. If you initiate ACH debit transactions on the same day as the effective date, we will apply them in the order we receive them.

**Chase.com or Chase Mobile Online Transactions:** For any payment or transfer, once you approve the transaction, we'll apply it to your account. For recurring or future dated payments, it is applied on the effective "send on" date.

**Checks Drawn on Your Account:** When cashed or deposited at a Chase ATM, branch, or online, the check will be pending on your account at the time it was cashed or deposited. Checks that are deposited at other banks will show as pending throughout the day as the other banks submit the item to us for payment. If the amount of the check identified in the notice exceeds your balance at the time we receive the notice, we may notify the other bank of that fact.

**Debit Card Transactions:** For more information on debit card transactions refer to the section *Important Information and Agreements About Your Card*.

**Wire Transfers:** Once we've begun processing the wire transfer and completed all of our internal reviews, we will apply the transaction to your account and update your available balance on the transfer's effective date.

While we make every effort to place transactions in a pending status on your account during the day, transactions may be unable to be displayed as pending before they are posted to your account. How these transactions are posted when they are completed and no longer display as pending is based on the posting order. Fees are applied against the account based on how transactions are posted. For details, refer to the section *Posting Order*.

## C. Overdrafts, Fees and Overdraft Protection

### 1. Paying transactions presented against insufficient funds

We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize or pay any type of transaction. Even if we've paid overdraft transactions before, we are not required to do it in the future.

We may pay or return any transaction when it is presented if your account balance is less than the amount of that transaction. The account balance we use to pay or return a transaction is determined during our nightly processing. During our nightly processing, we take your previous end of day's balance and post credits. If there are any deposits not yet available for use or holds (such as a garnishment), these will reduce the account balance used to pay your transactions. Then we subtract any debit transactions presented during our nightly processing. We look at your balance only once when the transaction is presented (or presented again at a later time such as a check or ACH) to us to decide if you have enough funds to pay the transaction. For details, refer to the section *Posting Order*.

The available balance shown to you during the day may not be the same amount used to pay your transactions as some transactions may not be displayed to you before nightly processing. We will decline any requested ATM withdrawal unless your available balance at the time is equal to or more than the amount of the requested withdrawal. Special rules for everyday debit card transactions, overdraft and fees for these transactions, are described in the *Electronic Funds Transfer Service Terms*. Withdrawals and debits at ATMs or with merchants may be subject to additional limitation described in the Additional Banking Services and Fees.

### 2. Your responsibility to repay overdrafts

You must immediately pay the amount of any overdraft along with any fees that apply. We may report you to consumer reporting agencies, close your account, or both. This could affect your ability to open accounts with us or other banks in the future. For certain business accounts, if you don't immediately pay the amount of overdraft, you may also be charged additional fees or interest during nightly processing.

You authorize us to use the money from any subsequent deposits to your account (including but not limited to a direct deposit of Social Security or any other state or federal benefit payment) to pay any overdraft and resulting fees in that account. The repayment of any overdraft or resulting fee from any other account is outlined in the section *Setoff and Security Interest*. For deposits you have authorized, you understand and agree that if you don't want your benefits applied in this way, you may change your direct deposit instructions at any time with the person or organization paying the benefits.

You agree to pay all costs and expenses we incur in collecting any overdraft. We may still pursue collection of the amount you owe (including suing you) after it is charged off. It's your responsibility to avoid overdrawing your account.

### 3. Overdraft Fees

We will charge an Overdraft Fee during nightly processing for any paid transaction posted on a business day when your account is overdrawn. If we return a transaction, we will not charge a fee. We will charge an Overdraft Fee for a transaction that may have been previously returned unpaid if it is later paid against an overdrawn balance. Special rules for everyday debit card transactions are described in the *Electronic Funds Transfer Service Terms*.

Refer to your product information and Fee Schedule for information about what fees apply and how fees are calculated for your account. We may limit the number of Overdraft Fees we charge for a business day. For business accounts, we may charge interest on any amount you are overdrawn that you haven't repaid promptly.

### 4. Overdraft Protection

Overdraft Protection allows you to link one of your accounts as your backup account to your checking account to help pay an overdraft. If your checking account does not have enough money, we will use the available funds from your backup account to authorize or pay transactions.

**Establishing or Canceling Overdraft Protection:** Any owner of both a qualifying checking account and the backup account may enroll in Overdraft Protection without the consent of other owners and both accounts must share at least one owner to maintain Overdraft Protection. Any owner of the checking account or the backup account may cancel Overdraft Protection (by terminating the service or closing the account) without the consent of other owners. A backup account can provide Overdraft Protection for more than one checking account, but a checking account can have only one backup account. A personal checking account may be linked to a Chase personal savings account; and a business checking account may be linked to a Chase business savings account or a business line of credit in good standing. We may cancel your Overdraft Protection service at any time. Your request to add or cancel Overdraft Protection will become effective within a reasonable time after approval.

**Transfers:** We will make one Overdraft Protection transfer per business day that will appear on your statement for both accounts. If you have enough available funds in your backup account, we will automatically transfer enough to bring your checking account balance to zero. If you do not have enough available funds in your backup account to bring your checking account balance to zero, but you have enough available funds to pay one or more transactions and/or your previous day's negative balance, we will transfer that amount. If the amount transferred does not bring your checking account balance to zero, your checking account will become overdrawn and you may be charged Overdraft Fees. If we authorize your transaction, we will leave the funds in your backup account until we pay the transaction, which may take several days. However, if you use those funds before the transaction is paid there will not be available funds to transfer and your checking account may become overdrawn and charged an Overdraft Fee. The available balance for a savings account is determined at the time that we authorize a transaction or at the end of business day processing. The available balance for a business line of credit is determined at the end of the previous business day processing. We are not required to notify you if funds from the backup account cannot be transferred for Overdraft Protection (for example if the account is dormant, purged, restricted or not in good standing). Refer to the section *Restricting Your Account; Blocking or Delaying Transactions* for additional information.

### D. Electronic Funds Transfer Service Terms; Payments, Deposits and Transfers You Make or Receive by Electronic Methods

We provide a variety of electronic funds transfer (EFT) services for deposit accounts. These include payments, deposits and transfers that you make or receive by electronic methods, such as with your card, telephone, or chase.com.

### 1. Types of EFT services

### a. Debit and ATM cards

As a condition of opening certain accounts, you agree that we may automatically issue you a Chase debit or ATM card (collectively "card" in this agreement). Activating your card is not required to keep your account open. We may reissue you a new card automatically before your current card expires; we will deactivate your old card when you activate your replacement card. Your Personal Identification Number (PIN) will remain the same.

You can use your card as follows:

**At ATMs to:**

- Withdraw cash;
- Transfer money;
- Check your balances;
- Deposit cash or checks;*
- Make payments to qualifying Chase credit cards and loans;*
- Obtain a copy of recent account activity.*

Services marked with an asterisk (*) are available only at Chase ATMs, and all services may not be available at all Chase ATMs.

When you use a Chase ATM, you will have access to all of your personal checking, savings and credit card accounts, regardless of whether the accounts are linked to your card. When linking multiple accounts to your card, one checking account and one savings account will be designated as primary. We also offer cards with limited functions for your deposit accounts, such as deposit-only business cards that can be linked to a checking or savings account. Subject to the limited functions provided for each card, limited-function cards are also considered "cards" under this agreement.

You can use a non-Chase ATM only if it is in a participating network. Your primary checking and savings accounts will be accessible on that network, and your other linked accounts may be accessible. Outside the U.S., only your primary checking account is usually accessible. We may charge a Non-Chase ATM Fee, and the ATM owner/network may also charge a fee, referred to as a "Surcharge Fee." On some accounts, we will refund ATM Surcharge Fees charged by the ATM owner/network;

however, some ATM owners/networks do not identify these fees in the information they send to us and, as a result, we may not automatically refund the Surcharge Fee. If for any reason the refund is not processed, please contact us. If you choose to convert an international transaction to U.S. dollars at either an ATM or on a purchase, foreign currency commissions and fees included in the exchange rate charged by third parties are excluded from Chase Surcharge Fee reimbursements.

**You can use your debit card (but not your ATM card):**

**At participating merchants to:**

- Purchase goods and services. Purchases are subtracted from your primary checking account. If you have arranged with your merchant to make recurring payments, you must notify the merchant if your card number or expiration date has changed or your debit card is closed. We may also provide the merchant or the participating network your new account number and expiration date.
- Withdraw cash while making a purchase using your PIN if the merchant permits the cash-back option.
- Send or receive payments from another person, or receive payments from a business by providing your card number to third-party payment services.

**At participating financial institutions to:**

- Withdraw funds at a teller. Withdrawals are subtracted from your primary checking account. You will be charged a Non-ATM Cash Fee.

### b. Electronic transfers using your account number

You may authorize a third party to transfer funds to or from your account by providing your account number and your routing number or your debit card number. These transfers may use various payment networks and may take various forms, such as:

- Employer payroll, government benefits or other direct deposits;
- One-time or recurring charges to your account to pay bills or make a purchase;
- Transfers between external accounts and your Chase accounts; or
- A "check conversion" transfer, where a merchant or other payee creates an electronic transfer from your paper check. The merchant may keep your check or return it to you.

### c. Online banking and Chase Mobile

You may use chase.com or Chase Mobile to view your account information, make deposits (Chase Mobile only), transfer funds between your Chase accounts, pay qualifying Chase loans or credit cards, or make payments from your account to third parties. Enroll for these services on chase.com or by downloading the Chase Mobile app for select mobile devices. You must agree to the additional disclosures and specific terms for using these services when you enroll.

### d. Telephone banking

You may use our automated customer service system or speak to us to get your account information, transfer funds between your accounts with us, or pay qualifying Chase loans or credit cards. You must have a valid deposit or loan account and a valid password or PIN to use the automated system. Business account owners may also use a valid Taxpayer Identification Number (TIN).

### e. Transfers for Overdraft Protection

Transfers to and from your accounts for Overdraft Protection are also EFTs and subject to these terms.

## 2. Important information and agreements about your card

### a. Authorizations and holds

Most merchants ask us to authorize your purchase. When we give authorization to a merchant, we will reserve or place a hold on your available balance, generally for three business days, for the amount of the authorization. There may be delays of several days between the authorization and the date the transaction is presented for payment, and your transaction may post to your account after the authorization hold has lifted.

We may authorize or refuse to authorize a transaction based on a different amount than the authorization request, because some merchants request authorization for an amount that is unrelated to the actual amount of the purchase (such as self-service fuel).

For some types of purchases we may place a hold for a longer period. There are times—for example, at restaurants, hotels or car rental agencies—that merchants won't know the exact amount of your purchase when they request the authorization. If the authorization is more or less than your actual purchase amount, the hold may remain for a day or two even after your purchase amount has been subtracted from your available balance. We will pay the purchase amount from your balance whenever the merchant sends it to us, even if the hold has expired.

### b. Overdrafts with your card

For personal accounts, unless you have notified us that you DO want us to pay debit card overdrafts at our discretion, we generally won't authorize an everyday debit card transaction if your available balance isn't enough to pay that transaction, and we will not charge an Overdraft Fee. For business accounts, if you have notified us NOT to pay overdrafts we generally won't authorize a debit card transaction if your available balance isn't enough to pay that transaction, and we will not charge an Overdraft Fee.

When we give authorization to a merchant for your purchase, your available balance will decrease. But the authorization will not prevent certain transactions, such as ACH transactions and checks, from posting to your account, which can leave your account without enough funds. To avoid Overdraft Fees, be sure to keep enough funds in your account to avoid overdrawing your account, including enough funds for previously authorized debit card transactions not yet posted to your account.

We rely on transaction coding sent to us by the merchant or other third party to determine whether the transaction is everyday or recurring, which affects whether or not we would authorize these transactions at our discretion and whether we can assess you Overdraft Fees. If any other transaction overdraws your account, we will assess fees described in the sections *Overdrafts, Fees and Overdraft Protection, Posting Order and Processing,* and the Fee Schedule.

### c. Canceling your card

We may cancel your card at any time without notice. You may cancel your card by calling us. If you do, please destroy it.

### d. Our right to refuse transactions

We can refuse to authorize any transaction when your card has been reported lost or stolen or when we reasonably believe there may be fraudulent, suspicious or illegal activity. If you lock your card, we will stop authorizing everyday debit card transactions and ATM withdrawals but may still authorize recurring debit card transactions. Any card we issue to you will be unlocked when you activate it.

### e. Foreign exchange transactions

The exchange rate applied to card transactions that occur in a different currency will be selected by the network that processes the transaction. The network will select from the range of rates available in wholesale currency markets or a rate mandated by the government that issues or controls the currency in that country on the date it processes the transaction. The processing date on which the exchange rate is applied may differ from the date you used your card. When the card transaction is posted to your account, we will charge a Foreign Exchange Rate Adjustment Fee on the card transaction amount after conversion to U.S. dollars.

The exchange rate we use may include a spread, commissions or other costs that we, our affiliates or vendors charge in providing foreign exchange to you. The exchange rate may vary among customers depending on your relationship, products with us, or the type of transaction being conducted, the dollar amount, type of currency, and the date and the time of the exchange. You should expect that these rates will be less favorable than rates quoted online or in publications.

### f. Debit or credit prompts at terminals

If a merchant asks "Debit or Credit?" when you make a purchase, you can choose either one and your purchase will be subtracted from your primary checking account.

- If you select Debit, you must also enter your PIN.
- If you select Credit, you may have to provide a signature except for some smaller amounts and when paying for self-service fuel.

### g. ATM safety and safeguarding your account information

**Be safe at ATMs.** Some ATM locations are recorded by a surveillance camera or cameras. We advise you to be aware of your surroundings before, during and after any ATM use. Here are some additional tips:

- Choose an ATM that is well lit.
- Don't use an ATM that looks unusual or altered.
- During the hours of darkness, consider having someone accompany you to the ATM.
- If you suspect the ATM isn't working properly or if you notice anything suspicious, cancel the transaction and find another machine.
- When using a Chase ATM with a separate entry door, you should close the door completely upon entering and should not permit entrance to any unknown person after regular banking hours.
- If you need emergency assistance as a result of criminal activity or medical emergency, contact 911.
- At a walk-up ATM, minimize transaction time by having your card ready to use. At a drive-up ATM, keep your car engine running and lock your doors.
- Stand between the ATM and anyone waiting to use the machine or cover your hand so others can't see your PIN or the transaction amount.
- As soon as your transaction is complete, remove your card from the ATM, and then put away your money, receipt, and card.
- Contact the police or a security officer if you see any suspicious activity at the ATM. If you think you're being followed, go to a heavily populated, well lighted area, and immediately contact the police.
- Complaints concerning security at New York Chase ATMs should be reported to the Chase Security Department at 1-800-900-0001 or the New York State Department of Financial Services at 1-888-697-2861.

**Keep your PIN confidential.** Never give your PIN to anyone, and don't write it down. In addition, to keep your card information safe:

- Use a PIN that others can't easily figure out.
- To change your PIN (or if you forget your PIN), request a new PIN at chase.com, call us or visit any Chase branch.

**Protect your debit card or ATM card as you would a credit card or cash.**

**Notify us immediately if your card is lost or stolen,** or if you discover any other error. The sooner you report a problem, the sooner we can take precautions to ensure your card isn't misused.

### 3. Daily dollar limits on ATM withdrawals and card purchases

To protect your balance, we place daily dollar limits on ATM withdrawals and card purchases, even if your available balance is higher than the daily limit. Your limits are contained in the product information you received when you opened your account.

However, we may:

- Allow transactions that exceed your limits.
- Temporarily reduce your limits without notice, for security purposes.
- Change your limits (we'll notify you if we do).

Your card will be restricted if we consider your account to be inactive or dormant.

### 4. Receipts and statements

You can receive or have the option to receive a receipt at ATMs, from a banker at a branch, online through chase.com, and at merchant locations each time you make a transaction. However, for certain small dollar transactions at merchant locations, you may not receive a receipt.

See *Statements and notices* for information about periodic statements.

To confirm that you have received a direct deposit, review your balance and recent transactions through chase.com, Chase Mobile, at an ATM, or call us.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2024 JPMorgan Chase & Co.
Return to Table of Contents
Page 12 of 29
Effective 8/12/2024

## 5. In case of errors or questions about your electronic funds transfers

If you think your statement is wrong, or if you need more information about a transaction listed on it, see the *How to Contact Us* section.

### For personal accounts only, the following procedures apply:

We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared. Please provide us with the following:

- Your name and account number;
- A description of the error or the transaction you are unsure about, and why you think it is an error or want more information; and
- The amount of the suspected error.

We will determine whether an error occurred within 10 business days after we hear from you and will correct any error promptly. However, if we need more time, we may take up to 45 days to investigate your complaint or question. If we do this, we will credit your account within 10 business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If your first account deposit is less than 30 days before the date of the suspected error, the 10-business-day period is extended to 20 business days. If your first account deposit is less than 30 days before the date of the suspected error or the transaction occurred at a point-of-sale location or outside the U.S., the 45-day period is extended to 90 days.

If you call us, we may require that you send us your complaint or question in writing within 10 business days. If we do not receive it within 10 business days, we may not credit your account.

We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**For business accounts,** our practice is to follow the procedures described above, but we are not legally required to do so. For example, we are not required to give provisional credit, or to finalize the claim during the periods stated above. We require you to notify us no later than 30 days after we sent you the first statement on which the error appeared. We may require you to provide us with a written statement that the disputed transaction was unauthorized.

## 6. Our liability for failure to complete transactions

If we do not complete a transaction from your personal account on time or in the correct amount, we will be liable for your losses or damages. However, we are not liable for any failed transaction if you do not have enough money in your balance to cover a transaction, if the ATM or device does not have enough cash or is not working properly, if circumstances beyond our control prevent the transaction, if the merchant requests authorization for an amount greater than the purchase amount, or if there are other exceptions stated in this agreement or as provided by law. We are not liable for failure to complete a transaction on a business account if we send you notice that the transaction was not completed.

## 7. Preauthorized (recurring) transfers and stop payments

You may use your account or debit card to make recurring payments. If these recurring payments vary in amount, the payee will tell you the amount and date of the next payment at least 10 days before the payment due date. You may choose to get this notice from your payee only when the payment would differ by more than a certain amount from the previous payment or when the amount would fall outside certain limits that you set.

You can stop some payments before the scheduled payment date in the following ways:

1. If you provided your card number for the recurring transfer, you must contact us by telephone or at the branch and give us the exact card number. We will close the card and you can replace it with a new card and card number upon request.

2. If you provided your account number and routing number for ACH direct debits to your account (both recurring and one-time payments), you must contact us by telephone or at the branch and give us your account number and the exact name of the payee. We will also need the exact amount of the payment, a range of amounts or an instruction to block all payments from the named payee. We will charge a Stop Payment Fee. We are not responsible for stopping payment on ACH transactions if you do not provide this information or if you provide inconsistent information. We may refuse a payment to a payee with a similar name that we believe to be the same payee; however, we are not liable if we don't refuse the payment. If you see a "pending" payment for a different amount or for a different payee than the stop payment you placed, contact us before the end of the business day so we can try to refuse payment. We may send you a written confirmation of your stop payment. We may rely on the information in the confirmation unless you notify us immediately of any errors. We may stop multiple transactions that have the amount and exact payee name you provided unless you cancel your stop payment request.

   For personal accounts, your ACH stop payment is effective until we have determined that the ACH transaction is no longer occurring, or for 18 months, whichever is longer.

   For business accounts, your ACH stop payment will either be effective:

   - Until we have determined that the ACH transaction is no longer occurring, or for 18 months, whichever is longer, or
   - One calendar year with automatic renewal annually for up to six additional years. We will list scheduled renewals on your business account statement 60 to 90 days in advance. The stop payment will be renewed, and you will be charged a Stop Payment Automatic Renewal Fee, unless you notify us not to renew by following the instructions in the statement.

3. If you set up your recurring or one-time bill payments or transfers through chase.com or Chase Mobile, you can use that service to cancel pending and future payments.

4. If you previously set up recurring account transfers in the branch, you can only cancel those pending and future transfers in the branch.

We will generally process a stop payment request as soon as we receive it. If you place a stop payment three or more business days before the transfer is scheduled, and we still pay, we will be responsible for your losses or damages.

For business accounts, you can enroll in ACH Debit Block on chase.com to block and return ACH debit transactions.

### 8. Disclosure of account information to third parties

Information about your account or the transactions you made will be disclosed to third parties:

- As necessary to complete transactions;
- In connection with the investigation of any claim you initiate;
- To comply with government agency, arbitration or court orders (including subpoenas);
- With your written permission;
- As permitted by our Privacy Notice.

### 9. Notice of your rights and liabilities

**For personal accounts only:**

Tell us AT ONCE if you believe your card, PIN or code has been lost or stolen. Calling us is the best and fastest way of keeping your possible losses to a minimum.

If you tell us within two business days, you can lose no more than $50 if someone used your card, PIN or code without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your card, PIN or code and we can prove we could have stopped unauthorized transactions if you had told us, you could lose as much as $500. If your statement shows electronic funds transfers that you did not make, tell us right away. If you do not tell us within 60 days after the statement was sent or otherwise made available to you, you may not get back any money you lost after the 60 days if we can prove that we could have prevented the transactions if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, let us know. We will extend the time periods.

**For business accounts only, you agree:**

- To assist us in the investigation of claims for unauthorized transactions and related prosecution by completing the appropriate statements and reports reasonably requested by us;
- To notify us promptly in writing if any user of a card is no longer employed by you or authorized to conduct business on your behalf;
- That by allowing anyone to use your card, or by failing to exercise ordinary care (such as storing your PIN with your card or selecting your birthday as your PIN), you will be responsible for all authorized and unauthorized transactions;
- That all of the provisions of this agreement, including liability limitations and the requirement that you give us notice of unauthorized transactions within 30 days, apply to your EFT services.

**Special Provisions for Card Transactions (Zero Liability Protection) for personal and business accounts:**

You are not liable for any unauthorized card transactions if you notify us promptly.

However, these special provisions do not apply where you were grossly negligent or fraudulent in the handling of your account or card, where you have given someone else your card, card number or PIN, or where you delay reporting unauthorized transactions for more than 60 days (30 days for business accounts).

### 10. Fees

Fees for all EFT services are disclosed in our Fee Schedule and product information.

### 11. Services not covered by this part; separate agreements

For personal accounts, EFT services described in the *Electronic Funds Transfer Service Terms* do not include wire transfers and any transactions that are not covered by Consumer Financial Protection Bureau Regulation E.

For business accounts, wire transfers and other services not specifically described in the *Electronic Funds Transfer Service Terms* are governed generally by this agreement or by separate agreements.

We may offer additional EFT services besides those described in the *Electronic Funds Transfer Service Terms* that have separate agreements and disclosures.

### E. Other Ways to Use Your Money

### 1. When you can withdraw funds you've deposited

Generally, for checking and savings accounts, you may withdraw funds the next business day after the business day you deposit them. But in some cases you may not. Please see the *Funds Availability Policy* for details.

If funds from a deposit become available and you can withdraw them, that does not mean the check or other item you've deposited is authorized, is "good," has "cleared," or has been paid by the paying bank. It's also possible that the check will be returned months after we've made the funds available to you and you've withdrawn them. No one, including our employees, can guarantee to you that a check will not be returned.

### 2. Withdrawals and transfers from your account

We may subtract from your available balance the amount of any check or other transaction that we receive throughout the day that you or any person you authorize created or approved. We may require you or any person you authorize to provide us with identification, documentation or information that's acceptable to us before allowing the transaction. If check writing is not an available feature of your account, we will not issue you checks, and you are not permitted to write checks drawn on your account. We will not pay checks if you attempt to do so.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2024 JPMorgan Chase & Co.

Return to Table of Contents

Page 14 of 29
Effective 8/12/2024

### 3. Transactions in a foreign currency

Any transaction we conduct for you in a foreign currency, such as sending or receiving a wire transfer to or from another country, depositing a foreign check, or exchanging foreign currency in our branches, will use an exchange rate. Currency exchange is only available at a limited number of branches and in certain currencies.

The foreign exchange rates we use are determined by us in our sole discretion. We may make a commission providing foreign currency exchange services to you. You should expect that these foreign exchange rates will be less favorable than rates quoted online or in publications. The exchange rate we use will include a spread and may include commissions or other costs that we, our affiliates, or our vendors may charge in providing foreign currency exchange to you. The exchange rate may vary among customers depending on your relationship, products with us, or the type of transaction being conducted, the dollar amount, type of currency, and the date and time of the exchange, and whether the transaction is a debit or credit to your account. If we complete a foreign currency exchange on your behalf, such as exchanging a foreign currency incoming wire transfer into U.S. dollars, we may apply a rate we have established without prior notice to you. Additional terms specific to outgoing wire transfers or consumer international wire transfers are contained in your wire transfer agreements.

We are not required to accept for deposit checks that are drawn on a non-U.S. bank or payable in a foreign currency. We may accept those checks on a collection basis without your specific instruction to do so. We can reverse any amount we've added to your balance and send the check on a collection basis even after we've taken physical possession of the check. Our Funds Availability Policy does not apply to any foreign check, whether we accept it for deposit or on a collection basis. The actual amount you receive for checks payable in a foreign currency will be determined at the exchange rate for such items that's in effect when we're paid for the check. If a check is returned later for any reason, we will subtract the amount of the check and any charges from other banks from your balance. We will use the applicable exchange rate in effect at the time of the return, which may be different from the exchange rate originally used for the deposit.

### 4. Large cash withdrawals

We may place reasonable restrictions on when and how you make any large cash withdrawal. We may also require that you sign a document releasing us from any liability if you are robbed or assaulted. We may refuse the withdrawal request if you do not agree with these conditions.

### 5. Stop payments on a check

If you request us to stop payment on a check, we will charge either a Stop Payment Fee or an Online or Automated Phone Stop Payment Fee depending on how you request your stop payment. However, the stop payment will not be effective if we have already certified, paid or otherwise become responsible for the check. For example, we can't stop payment on a check we've already cashed or a deposited check where the funds have already been withdrawn. Refer to the *Electronic Funds Transfer Service Terms* for how to place a stop payment on recurring electronic payments.

You may request a stop payment by calling us, in person, or through chase.com or Chase Mobile. We use automated systems to identify items, so we need specific information to process the request. In order for us to identify the item, you must give us the account number on which the check is drawn and either:

- The exact check number or a range of check numbers,
- The payee name and the exact amount of the check, or
- The payee name and range of amounts of the check.

We are not responsible for stopping payment on checks if you do not provide this information or if you provide inconsistent information. We may refuse a payment to a payee with a similar name that we believe to be the same payee; however, we are not liable if we don't refuse the payment. We may send you a written confirmation of your stop payment. We may rely on the information in the confirmation unless you notify us immediately of any errors. When the stop payment order expires, we may pay the item and have no duty to notify you.

For personal accounts, your stop payment request lasts for one year even if the check is presented more than once unless you cancel your stop payment request. However, you may place a new stop payment order, which will be effective for one calendar year from the day you place the additional order. An additional fee will be charged.

For business accounts, you may place a stop payment for either:

- One calendar year with automatic renewal annually for up to six additional years. We will list scheduled renewals on your business account statement 60 to 90 days in advance. The stop payment will be renewed, and you will be charged a Stop Payment Automatic Renewal Fee, unless you notify us not to renew by following the instructions in the statement, or
- One calendar year (this option is not available for stop payments initiated on chase.com or Chase Mobile).

Generally, we will complete your request as soon as we receive your instructions.

We may allow you to place a stop payment on a cashier's check, teller's check or certified check if you provide us a sworn statement—in a form we deem acceptable—that the check is lost, stolen or destroyed. Even if we agree to attempt to stop payment on a cashier's check, teller's check (official check) or certified check, if the check is presented for payment, we may pay it and you will be liable to us for that item, unless otherwise required by applicable law. After you place a stop payment, we are not required to refund the check amount or issue a replacement check until at least 90 days after the original check's issue date. We are not required to refund the check amount or issue a replacement check if the check is presented for payment within 90 days after the issue date.

### 6. Account numbers on funds transfers

If you instruct us to send a funds transfer, such as a wire or ACH, we and every other bank involved in the transfer may rely on any bank number or account number you provide. If the funds transfer instruction gives both a bank number or account number and a name, and the name identifies a different person from the bank or account owner identified by number, we and other banks that handle the funds transfer may still rely exclusively on the number. We have no duty to detect any inconsistency between the bank number or account number and the name.

### 7. Savings account withdrawals

In this agreement, a savings account means an account, including a money market account (and excluding NOW accounts), for which we reserve the right to require seven days' prior written notice to withdrawal. See the section *Our right to require advance notice of withdrawals*. During any monthly statement period, you may make transfers and withdrawals, regardless of the number of transfers and withdrawals or the way in which transfers and withdrawals are made. You agree not to make withdrawals by negotiable or transferable instruments (checks or drafts) for the purpose of making transfers to third parties from savings accounts.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2024 JPMorgan Chase & Co.

Return to Table of Contents

Page 15 of 29
Effective 8/12/2024

## 8. Our right to require advance notice of withdrawals

For all savings accounts and all personal interest-bearing checking accounts, we reserve the right to require seven days' prior written notice of withdrawal.

## 9. Check cashing

If a person who is not our deposit or loan customer tries to cash your check at any of our branches, we may charge them a fee or refuse to cash it. We may also require that they provide us identification we deem acceptable.

## 10. Incomplete, future-dated, conditional or stale-dated checks

You agree not to write a check that's incomplete, future-dated or tries to limit the time or method of payment with a condition, such as "Void after 180 days" or "Valid only for $1,000 or less." We have no duty to discover, observe or comply with these conditions and may pay such checks. If we pay a conditional check, the conditions do not apply to us.

We may choose to pay or not to pay a stale-dated check (dated more than six months before it is presented), regardless of how old it is. If we pay it, you will be responsible for the check.

## 11. Multiple signatures

We are not required to comply with any multiple-signature requirement, either on personal or business accounts, even if your signature card specifies that multiple signatures are required or you have otherwise instructed us to do so. A multiple-signature requirement is for your internal control purposes only.

## 12. Facsimile signatures

We may pay a check bearing any form of facsimile or computer-generated signature. If you use a facsimile or computer-generated signature, or provide a signature card authorizing any such signature, you will be solely responsible for any check bearing a similar signature, regardless of your negligence or whether the signature was the same one you previously used.

## 13. Review of checks and signatures

Check payment is highly automated, and we pay millions of checks every day. Although we inspect some checks, you agree that reasonable commercial standards don't require us to do so. If we return a check because we believe it doesn't match your signature on file with us, we're not liable to you even if you authorized the check. If the numeric amount on a check doesn't match the amount written out in words, we may select either one when paying it. We have no duty to prevent a check from being presented more than once.

## 14. Substitute Checks and Your Rights
### What is a substitute check?

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks, with a reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

### What are your rights as a consumer regarding substitute checks?

In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, Overdraft Fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if applicable) within 10 business days after we receive your claim and the remainder of your refund (plus interest if applicable) no later than 45 calendar days after we receive your claim. We may reverse the refund (including interest) if we later determine the substitute check was correctly posted.

### How do you make a claim for a refund?

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us. You must contact us within 40 calendar days of the date that we mailed or otherwise delivered the substitute check or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

### Your claim must include:

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- The following information to help us identify the substitute check: the check number, the name of the person to whom you wrote the check, and the amount of the check.

### Depositing substitute checks

You may receive a substitute check, such as when a check you deposited is returned unpaid. If you deposit a substitute check and we suffer a loss, cost or expense as a result, you will have to pay us that amount.

## IV. Funds Availability Policy

**When Your Deposit Is Received:**

If you make a deposit with a banker at a branch on a business day, we will consider that day to be the day of your deposit. If you make a deposit on a business day before our cutoff time at a Chase ATM, we will consider that day to be the day of your deposit. However, if you make a deposit on a day that is not a business day, or make an ATM deposit after the ATM cutoff time, we will consider the deposit to have been made on the next business day.

- For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays and federal holidays.
- For deposits and transfers at most ATMs, the cutoff time is 11 p.m. Eastern Time (8 p.m. Pacific Time). For ATMs with an earlier cutoff, the ATM screen will notify you of the cutoff time.
- Deposits placed in a night depository are considered received when we remove them from the night depository; we will remove deposits no later than the next business day.
- Branches in some locations may be closed on business days in observance of a state holiday or because of an emergency, and deposits made at a night depository when those branches are closed will be considered received on the next business day when the branch is open.
- We will not accept cash deposits by mail. Check deposits made by mail should be addressed to:

National Bank By Mail
PO Box 6185
Westerville, OH 43086

All deposits made by mail and addressed to any other Chase facility may be forwarded to the National Bank By Mail facility in Westerville, Ohio, and will be considered received on the date the deposit is received by that facility.

**For all accounts other than Chase Analysis Business Checking (with or without Interest):** Wire transfers, electronic direct deposits and cash deposits will be available on the day we receive your deposit. Except as described later in this policy, when you make other deposits, the funds are available on the first business day after the day we receive your deposit.

In most cases when you deposit checks drawn on a Chase account:

- Deposits made with a banker at a branch will be available on the same day we receive your deposit;
- Some or all deposits made at an ATM will be available on the same day we receive your deposit.

Once funds are available, you may withdraw them or use them to pay checks and other items. For online banking deposits, different terms may apply.

**For Chase Analysis Business Checking (with or without Interest):**

**Same-day availability:** Wire transfers, electronic direct deposits, and cash deposits made with a banker at a branch or at an ATM will be available on the day we receive your deposit.

**Next business day availability:** Funds from the following deposits are available on the first business day after the day we receive your deposit:

- U.S. Treasury checks that are payable to you;
- Checks that are drawn on us.
- The following items, if you make the deposit with a banker at a branch:
  a. State and local government checks that are payable to you, if you use the "Next Day Funds Availability" deposit slip available at any branch upon request;
  b. Cashier's, certified, and teller's checks that are payable to you, if you use the "Next Day Funds Availability" deposit slip available at any branch upon request;
  c. Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders that are payable to you.

**Second business day availability:** Funds from all other deposits are available no later than the second business day after the day we receive your deposit. Available funds may be withdrawn in cash or used to pay checks and other items.

For online banking deposits, different terms may apply.

**Longer Delays May Apply:**

**For all accounts other than Chase Analysis Business Checking (with or without Interest):** In some cases, we may not make all of the funds that you deposited by check available by the first business day after the day of your deposit. Funds may not be available until the second business day after the day of your deposit. However, the first $225 of these deposits will be available on the first business day after the day of your deposit, unless we delay availability for one of the circumstances listed below. If you will need the funds from a deposit right away, you should ask us when the funds will be available, but further review of the deposit after we receive it may still result in delayed availability.

**For all accounts:** We may delay availability for the full amount of the check, including the first $225, up to the seventh business day after the day of your deposit under the following circumstances:

- We believe a check you deposited will not be paid;
- You deposited checks totaling more than $5,525 in any one day;
- You redeposited a check that has been returned unpaid;
- You have overdrawn your account repeatedly in the last six months; or
- There is an emergency, such as failure of communications or our systems.

If your check deposit is made with one of our employees or at an ATM and we decide at that time to delay your ability to withdraw funds, we will tell you then. If we decide to delay availability of your funds after you complete your deposit, we will mail you a deposit hold notice by the business day after we decide to take that action.

**Special Rules for CDs and Retirement Money Market Accounts:**

Generally, funds you deposit will be available within one business day except when you deposit checks that total more than $5,525 in a business day. The amount exceeding $5,525 will be available no later than the seventh business day after the day of your deposit. However, we are not required to let you withdraw principal from a CD before it matures.

**Special Rules for New Accounts:**

If you are a new customer, the following special rules may apply during the first 30 days your account is open:

- Funds from deposits of the first $5,525 of a business day's total deposits of cashier's, certified, teller's, traveler's, and federal, state, and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you. The excess over $5,525 will be available on the seventh business day after the day of your deposit. If your deposit of these checks (other than U.S. Treasury checks) is not made with a banker at a branch, the first $5,525 will not be available until the second business day after the day of your deposit; and
- Funds from all other check deposits will be available no later than the seventh business day after the day of your deposit.

**Holds on Other Funds:**

If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available on the day they would have been available if you had deposited the check.

## V. Safeguarding Your Information

### A. Checks and Other Documents You Use

We are not responsible for losses or delays that result from improper printing on checks or other account documents that you obtain through someone other than us. We may refuse to accept for deposit or to pay checks that we cannot process or photograph using our customary equipment.

### B. Protecting Your Checks

You must protect your checks and information from theft and unauthorized use. You must write your checks in a way that prevents someone else from completing, altering or adding to them without your authorization. If you become aware that any checks or other information, such as statements, have been lost or stolen, you must notify us immediately. If you fail to do any of these things, such as leaving your checks where they can easily be stolen, we are not responsible for any losses that may result.

### C. Review Your Account Statements for Checks and Other Errors

**Review Your Account Statements.** You are responsible to review your account statement to identify and notify us whether any unauthorized transactions or errors have occurred and notify us promptly (see the *How to Contact Us* section) and failure to do so means you will be financially responsible for those errors. For all errors, you must provide us with all information we need to investigate the alleged error or item. You must also file any police reports and provide any supporting written statements, declarations, affidavits, and testimony we reasonably request. We have no duty to you to determine whether any check is forged, counterfeit, altered, improperly endorsed or otherwise improper.

**Let Us Know About Check Errors.** To be considered for reimbursement you must notify us:

- Within 60 days after we make a statement available if a check drawn on your account that you did not authorize or that is altered is listed on your statement.
- Within 6 months after we make the statement available if a check drawn on your account has any unauthorized, forged, improper or missing endorsements on the back of the check.

We may not be liable to reimburse these checks to you. If you report to us within the timeframes above we may work with the depositing bank on your behalf to attempt to recover your funds. In addition, if you fail to notify us of any unauthorized check within 30 days after we make a statement available that first lists an unauthorized check, we are not required to reimburse you for unauthorized checks initiated by the same wrongdoer(s) that we pay after that time. If you do not comply with these requirements, we are not required to reimburse you for any claimed loss, and you cannot bring any legal claim against us in any way related to the check or errors. These timeframes do not limit our rights to attempt to collect on checks from other banks.

**Let Us Know About Other Errors.** You must notify us within 30 days after we make a statement available if:

- There is an inaccurate or unauthorized teller transaction;
- Your account statement contains any errors; or
- You did not receive your scheduled statement.

If you do not comply with these requirements, we are not required to reimburse you for any claimed loss, and you cannot bring any legal claim against us in any way related to the errors.

**Other Transaction Types.** The requirements of this section, *Review Your Account Statements for Checks and Other Errors,* apply only to checks, teller transactions, and similar transactions. They do not apply to account transactions addressed by the *Electronic Funds Transfer Service Terms.* Additional terms specific to outgoing wire transfers or consumer international wire transfers, including cancellations, errors and unauthorized transactions are contained in your wire transfer agreements.

You also have certain rights under federal law for substitute checks; please see *Substitute Checks and Your Rights* for more information.

## VI. Managing and Maintaining Your Account

### A. Interest on Checking and Savings Accounts

When you open a checking or savings account that pays interest, we will provide you a rate sheet stating the current interest rate and Annual Percentage Yield for your account. The rate sheet is considered a part of this agreement.

Your account has a variable interest rate. That means we may change the interest rate and Annual Percentage Yield as often as we choose, without limits and without notice. Interest begins to accrue on the business day we receive credit for your deposit. For cash, wire transfers and electronic direct deposits, interest begins to accrue on the business day of your deposit.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2024 JPMorgan Chase & Co.

We use the daily balance method for calculating interest. This method applies a daily periodic rate to the balance in your account each day, which may be based on your present balance or collected balance as explained in the product information for your account. The collected balance is the balance of all deposits in your account on which we have received credit for the deposited funds (determined by the availability schedule of our Federal Reserve Bank for checks and similar items). We reserve the right not to pay interest on any deposited item that is returned to us unpaid.

Interest is credited and compounded monthly. However, Retirement Money Market accounts with interest distributions will not compound, and interest will be credited on the distribution date. Unless otherwise stated in your product disclosure, interest is computed on a 365-day basis. We pay interest only in whole cents. Therefore, at the end of each interest payment period (usually monthly), any fractional amount of interest less than half of one cent will be rounded down and any fractional amount of interest equal to half of one cent or more will be rounded up to the next whole cent.

## B. Linking Your Accounts; Statements

### 1. Linked accounts

You may link your qualifying accounts to your checking account to help you avoid some fees and get relationship rates. An account may be linked to only one checking account.

We may automatically link accounts or we may provide some of the benefits you would be eligible for had you requested your accounts to be linked. If we don't, you may ask us to link your accounts. Your account information may be made available to any other owner on any of the linked accounts. If the checking account to which your other accounts are linked closes for any reason, it is your responsibility to request any remaining eligible accounts to be linked. If we determine your accounts are no longer eligible for linking, we may delink them and we are not required to notify you if we do.

If you choose to link your accounts to other accounts for which you serve as trustee or custodian (fiduciary), your account may receive a financial benefit, which could be a violation of your fiduciary duties. We are not responsible for your decision to link fiduciary accounts. You should carefully consider this decision and consult with your legal advisor if necessary. Refer to your product information to determine which qualifying accounts are eligible to be linked, any additional requirements and the benefits from linking accounts.

### 2. Statements and notices

We will make a monthly account statement available for checking and savings accounts during each statement period. The statement period may or may not be a calendar month, but in most cases it won't be more than 32 days or less than 28. The specific dates covered by your account statement will be on your statement.

You will receive either a paperless statement or a statement by mail. We may not mail statements if your account has had no activity other than interest we paid. If you receive paper statements, we will mail them through U.S. mail to the current address listed in our records. We may change your mailing address if we receive an address change notice. Checking and savings statements are also generally available through chase.com or Chase Mobile.

We have made the statement available to you on the day we mail your paper statement or notify you that the paperless statement is available, even if your current address or email is invalid.

We may send you other notices related to your account. If you are enrolled in chase.com or Chase Mobile, some notices may only be available electronically. We send some notices only in paper form. You agree that sending the statement or notice to one owner of an account qualifies as sending it to all owners, even if all owners don't have access to the mailing address of record for the account.

### 3. Combined statements

Checking, savings and CD accounts with at least one common owner may be combined on a single statement, either with or without your request. For customers receiving statements by mail, combined statements will be sent to the primary account holder's address, unless a new mailing address is designated for the account. However, we may send you separate statements at any time for any reason without prior notice. If accounts are included on a combined statement and you don't want that, notify us and we'll separate the statements. That change will affect only future statements.

Linked accounts do not have to be on a combined statement to receive the benefits of linking, and combining accounts on a single statement does not mean that the accounts are linked.

Each owner of each account listed on the statement can request a copy of a statement and will be able to view all account activity for all accounts on that statement through chase.com or Chase Mobile.

### 4. Options for receiving checks

We offer three choices for how you can view or receive copies of checks you've written or authorized:

- "Check safekeeping" means we keep images of your checks, which are available through chase.com. We do not include your paid checks or images of them with your statement. Some accounts require check safekeeping.

- "Image statement" means you will receive images of the front of your paid checks on your account statement.

- "Check enclosure" means we return legal copies of your paid checks for each statement cycle. This feature is not offered on all accounts or on paperless statements. If your statement is changed from paper to paperless, you will receive an image statement instead of check enclosure.

If you have multiple personal checking accounts on a single statement and one of them uses check enclosure, all others will use check safekeeping. You agree that when we send a statement we have made the check available to you, even if we do not send originals or images with the statement. We will destroy original checks after a reasonable period of time we determine.

If for any reason we can't provide a copy of your check, you agree that we will not be liable for more than the face amount of the check. We cannot provide originals or images of checks that are sent to us as electronic transfers. Additionally, other banks may send us electronic images instead of original checks, so we can provide a copy of the image, but not the original check.

## C. Telephone and Electronic Communication

We may record and/or monitor any of our telephone conversations with you. If we do record, we do not have to keep the recordings, unless the law says we must. We may use your voice to verify your identity.

When you give us your mobile number, we have your permission to contact you at that number about all of your Chase or J.P. Morgan accounts. Your consent allows us to use text messaging, artificial or prerecorded voice messages and automatic dialing technology for informational and account service calls, but not for telemarketing or sales calls. It may include contact from companies working on our behalf to service your accounts. Message and data rates may apply. You may contact us anytime to change these preferences. If you give us your email address, you agree that we may send servicing messages (such as fraud alerts and hold alerts) related to your accounts to that address.

We may send communications electronically, such as by email or text message, rather than through U.S. mail or other means, unless the law says otherwise.

### D. Fees for Your Account

You agree to pay all fees applicable to your account. We provided you a schedule of fees when you opened your account, and we will notify you of any changes. We may subtract these fees from your balance, even if the fee makes your balance negative. Refer to the Fee Schedule for specific fee information.

### E. Setoff and Security Interest

If you owe a debt to us or any of our affiliates (either now or in the future) that is due or overdue, you grant us a right of setoff to, and a security interest in, all of your accounts to secure the debt and, as a consequence, we may use funds in any of your accounts to pay all or part of that debt. If your account is a joint account, we may use the funds in the joint account to pay the debt of any account owner. Our security interest will be governed by Uniform Commercial Code Article 9, whether Article 9 applies by its terms or not. We do not have to give you any prior notice to apply the funds except as required by law. To the extent permitted by law, you expressly agree that our rights extend to any federal or state benefit payments (including Social Security benefits) that had been deposited to your account. The right of setoff does not apply if the debt is created under a consumer credit card plan. Any term that may exist in another agreement that governs your debt that may also provide for such rights provided here will be governed by that agreement.

If any federal benefits or other payments are deposited to your account after you become ineligible to receive them, and we return those funds to the payor, we may reduce your account balance by that amount.

### F. Account Alerts

If you receive or otherwise use Account Alerts, you agree to the following terms. If you are enrolled with chase.com, the terms of the digital or other online service agreements control the terms of these services instead.

- We may use an email address we have in our records for you that you provide to us for these services so we can send you certain information about your account. You may be automatically enrolled to receive certain Account Alerts via email. To manage your Alerts preferences or cancel Account Alerts, use chase.com or Chase Mobile or call us. We do not charge for Account Alerts.
- Delivery of alerts may be delayed for various reasons, including service outages; technology failures; and system capacity limitations.
- Account Alerts are provided for your convenience and do not replace your monthly statement, which is the official record of your account. Anytime you review your balance, keep in mind it may not reflect all transactions, including recent debit card transactions or checks you have written.
- You understand we may not encrypt information when it is sent to you through these services. This information may include personal or confidential information about you, such as account activity or the status of your account.

You understand we are not liable for losses or damages from any disclosure of account information to third parties, non-delivery, delayed delivery, misdirected delivery or mishandling of, or inaccurate content in Account Alerts. If we suffer a loss, cost or expense because you provide an incorrect email address, or you violate applicable laws, you have to pay that amount to us.

## VII. Maintaining Your Certificate of Deposit (CD) Account

A certificate of deposit, or CD, is a deposit account with us for a specified period of time. This disclosure covers both retirement and non-retirement CD products. By opening your CD, you agree to keep the amount deposited (principal) on deposit. If you make a check deposit to your CD at account opening or during the renewal period and the check is returned to us unpaid, we will subtract the amount of the returned check from your CD balance. If a balance remains in the CD, it will stay open with the reduced balance. If there is a zero balance after we subtract the returned check, we will close the CD. If there is a negative balance in your CD after we subtract the returned check, you must immediately pay the amount of the overdraft.

Here are a few things you should know about CDs:

**Term:** The term is the number of days, months or years you agree to leave your money in the account.

**Maturity date and grace period:** The maturity date is the last day of your CD's term. The grace period is the 10 days after the maturity date for CDs with a term of 14 days or longer. On the maturity date or during the grace period you can change the term of your CD, make additional deposits (for non-retirement CDs only), or withdraw your CD principal without paying an early withdrawal penalty.

**CD ladders:** A CD ladder is a group of four CDs opened at the same time for the same amount but with different terms. When each CD matures, its term will change to the longest term of the original group. For example, in a 12-month ladder, we will open four CDs with original terms of 3, 6, 9 and 12 months. When each CD matures, its new term will be 12 months. The result will be four 12-month CDs with a CD maturing every three months.

**Automatically renewable CD:** An automatically renewable CD will renew on the maturity date for the same term unless 1) you have a different renewal term as part of a CD ladder; 2) you change or close the account or 3) we notify you otherwise. Once your CD renews, any reference to the maturity date means the last day of the new term. For the renewal term, your CD will earn interest for the term and amount at the CD standard rate unless you qualify for the CD relationship rate. If your CD is closed during the grace period, it will not earn interest on or after the maturity date.

**Single maturity CD:** A single maturity CD will not automatically renew on the maturity date and won't earn interest on or after that date.

**Interest:** We use the daily balance method to calculate interest on your CD. This method applies a periodic rate each day to your balance. Interest begins to accrue on the business day of your deposit. Interest for CDs is calculated on a 365-day basis, although some business CDs may calculate interest on a 360-day basis. The Annual Percentage Yield (APY) disclosed on your deposit receipt or on the maturity notice assumes interest will remain on deposit until maturity. On maturities of more than one year, interest will be paid at least annually.

You may withdraw any paid or credited interest without penalty during your CD's term or at maturity. On the maturity date, interest will become principal of the renewed CD. A withdrawal will reduce earnings.

**Early withdrawal penalties: There is a penalty for withdrawing principal prior to the maturity date.**

**For Personal CDs:**

- If the term of the CD is less than 6 months, the early withdrawal penalty is 90 days of interest on the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- If the term of the CD is 6 months to less than 24 months, then the early withdrawal penalty is 180 days of interest on the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- For terms 24 months or more, the early withdrawal penalty is 365 days of interest on the amount withdrawn, but not more than the total amount of interest earned during the current term of the CD.
- If the withdrawal occurs less than seven days after opening the CD or making another withdrawal of principal, the early withdrawal penalty will be calculated as described above, but it cannot be less than seven days' interest. We may not permit withdrawals if funds have not been credited to the account.
- The amount of your penalty will be deducted from principal.

**For Business CDs:**

- If the term of the CD is less than 12 months, the early withdrawal penalty is equal to $25 plus 1% of the amount withdrawn.
- For terms of 12 months or more, the early withdrawal penalty is equal to $25 plus 3% of the amount withdrawn.
- If the withdrawal occurs less than seven days after opening the CD or making another withdrawal of principal, the early withdrawal penalty will be calculated as described above, but it cannot be less than seven days' interest. We may not permit withdrawals if funds have not been credited to the account.
- The amount of your penalty will be deducted from principal.

**Waiving early withdrawal penalties for Personal CDs:**
We will waive early withdrawal penalties under the circumstances described below, unless these withdrawals occur less than seven days after the account was opened or a previous withdrawal was made.

For non-retirement CDs:

- Death of a CD owner or a grantor of a revocable family/living trust;
- Disability of a CD owner;
- A court's determination that a CD owner is incompetent; and
- Re-titling of a CD to transfer ownership of funds into a living trust without moving funds from the bank and where no change in term or rate occurs.

For retirement CDs:

- If the retirement CD owner is withdrawing an excess annual retirement contribution amount and any corresponding earnings.

We will also waive early withdrawal penalties for retirement CDs under the circumstances described below, regardless of when the early withdrawal is made in relation to the CD opening or a previous withdrawal.

- Death or disability of a retirement CD owner;
- A court's determination that a retirement CD owner is incompetent; and
- If the retirement CD owner is age 59½ or older and the funds are taken as an IRS-reportable distribution via cash, check, or deposit or transfer to a non-retirement account. This waiver does not apply if the transfer is to a retirement account at another financial institution.

**Waiving early withdrawal penalties for Business CDs owned by a sole proprietorship:**
We will waive early withdrawal penalties under the circumstances described below, unless these withdrawals occur less than seven days after the account was opened or a previous withdrawal was made.

- Death of a CD owner or a grantor of a revocable family/living trust;
- Disability of a CD owner;
- A court's determination that a CD owner is incompetent; and
- Re-titling of a CD to transfer ownership of funds into a living trust without moving funds from the bank and where no change in term or rate occurs.

# VIII. Closing Your Account

Either you or we may close your account (other than a CD) at any time for any reason or no reason without prior notice. We are not required to close your account at your request if you have pending transactions, the account is overdrawn, your account is subject to legal process (such as a garnishment, attachment, execution or levy) or any type of holds (such as collateral hold, decedent hold or deposit hold). In those cases, we will limit the types of transactions that you can make until pending transactions are paid or returned, the balance is no longer negative and any legal restriction/hold has been released. After we restrict your account in preparation for closing, we will not pay any additional interest on the account. We may automatically close your account if the balance is $0 or negative. Either you or we may close your CD account on any maturity date without cause.

We may send you written notice that we have closed or will close your account and return the balance less any fees, claims, setoffs or other amounts if the balance is greater than $1. After your account is closed, we have no obligation to accept deposits or pay any outstanding checks, but we may reopen your account if we receive a deposit. We will have no liability for refusing to honor any check drawn on a closed account. We may advise consumer reporting agencies of accounts closed for misuse, such as overdrafts.

This agreement continues to apply to your account and issues related to your account even after it closes.

# IX. Other Legal Terms

## A. Rules Governing Your Account

This agreement, all accounts and services provided to you, and any dispute relating to those accounts and services are governed by federal law and, when not superseded by federal law, the law of the state where your account is located.

Here's how we determine where your account is located:

- If you applied for the account in person at one of our banking offices, then the account is located in the state where you applied.
- If you applied in person for a business account with one of our representatives somewhere other than at one of our banking offices (your place of business, for example), your account is located in the state where the representative's business office is located.
- If you applied for the account by mail, digitally, or through other remote means, and your address as recorded in our records was in a state where we had a branch at the time, then the account is located in that state, which for joint accounts will be based on the address of the owner whose name was listed first.
- In all other cases your account will be governed by Ohio law.

Business trust accounts for professionals regulated by a state (or a self-regulatory body under a state's laws) are located in the designated state.

## B. General Liability

Any provision of this agreement that limits the bank's liability does not negate the bank's duty (if any) under applicable law to act in good faith and with reasonable care. If any provision of this agreement is determined to limit the bank's liability in a way prohibited by applicable law, the provision will nevertheless be enforced to the fullest extent permitted under that law.

We will not be liable for anything we do when following your instructions. In addition, we will not be liable if we do not follow your instructions if we reasonably believe that your instructions would expose us to potential loss or civil or criminal liability, or conflict with customary banking practices. **WE WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IF WE FAIL TO STOP PAYMENT ON AN ITEM, OR PAY AN ITEM BEARING AN UNAUTHORIZED SIGNATURE, FORGED SIGNATURE, OR FORGED ENDORSEMENT OR ALTERATION, OUR LIABILITY, IF ANY, WILL BE LIMITED TO THE FACE AMOUNT OF THE ITEM.**

If this agreement conflicts with any statements made by one of our employees or by our affiliates' employees, this agreement will govern.

## C. Restricting Your Account; Blocking or Delaying Transactions

There are many reasons we may decline or prevent transactions to or from your account or otherwise restrict your account, but we generally do it to protect you or us, or to comply with legal requirements or Legal Process. You acknowledge and agree that we may decline or prevent any or all transactions to or from your account, including refusing, freezing, reversing or delaying any specific withdrawal, payment or transfer of funds to or from your account, or removing funds from your account to hold them pending investigation, including in one or more of the following circumstances:

- Your account is involved in any legal or administrative proceeding;
- We receive conflicting information or instructions regarding account ownership, control, funds or activity;
- We suspect that you may be the victim of a fraud, scam or financial exploitation, even though you have authorized the transaction(s);
- We suspect that any transaction may involve illegal activity or may be fraudulent;
- We are complying in our sole discretion with any federal, state or local law, rule or regulation, including federal asset control and sanction rules and anti-money-laundering rules, or with our policies adopted to ensure that we comply with those laws, rules or regulations; or
- We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.

We also may limit cash deposits to, or withdrawals from, your account (or all of your accounts collectively) in a single transaction or total withdrawals or deposits during any period of time, or who may make deposits, in order to reduce risk and/or enhance our efforts to comply with applicable law.

We may assign and transfer your account information and documentation to a replacement account number at our discretion and without notice to you. We may make this assignment when we deem necessary to avoid disruptions, including when your account is reported compromised by you or any signer. If we issue you a replacement account number, this agreement governing you and your account will continue to apply, without interruption, as if you retained the discontinued account number.

We will have no liability for any action we take under this section and/or related sections, and we may take such action without advance notice. To the extent that any action we take is related to Legal Process or an Adverse Claim, please refer to those sections for additional information.

## D. Changes to the Agreement

We may change the terms of this agreement, including fees and features of your account, at any time. If any change would adversely affect you, we will notify you in advance, unless the change is necessary to comply with a legal requirement.

For CDs, changes that would adversely affect you will be effective on the next maturity date.

If we transfer your account to a different business unit within the bank, we may give notice in the same manner and provide you a different deposit agreement to govern your account. You agree that notice of these changes may be provided to any joint owner.

We are not required to send you notice of interest rate and Annual Percentage Yield changes for variable rate accounts or notice of changes in printing fees for documents (such as checks).

We may direct you to a branch or chase.com for the content of any changes or the revised agreement unless the law requires a different method. By maintaining your account after the effective date of any change, you agree to the change.

This agreement takes the place of any understandings, agreements, representations, and warranties, both written and oral, made prior to or when you entered into this agreement.

### E. Our Responsibility to Obtain Personal Information

Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or business who opens an account. We require the following information or documents as a condition to your opening an account:

- For a personal account: your name; residential address; date of birth; and Social Security number, driver's license or other identifying documents
- For a business account: your business name, taxpayer identification number and business address; the name, residential address, date of birth and Social Security number of each signer, so we can verify the signer's identity; and documents to verify the business's existence.

Our policies may require additional information about you or any person associated with you or with the account when or after you open the account to assure that we comply with "Know Your Customer" requirements. We may restrict or close your account if we are unable to obtain information in order to satisfy our "Know Your Customer" requirements. By opening an account with us, you confirm that neither you nor any beneficial owner of any account is covered by any sanctions programs administered or enforced by the U.S. Department of the Treasury, Office of Foreign Asset Control.

### F. Prohibited Activities and Tax Reporting

We strictly prohibit the use of any account to conduct transactions (including, without limitation, the acceptance or receipt of credit or other receipt of funds through an electronic funds transfer, or by check, draft or similar instrument, or the proceeds of any of the foregoing) that are related, directly or indirectly, to unlawful Internet gambling. The term "unlawful Internet gambling," as used in this Notice, shall have its meaning set forth in 12 C.F.R. Section 233.2(bb). You agree not to conduct any transactions through the account that directly or indirectly involve or are related to unlawful Internet gambling, including, without limitation, the acceptance or receipt of any funds or deposits in connection therewith.

You also agree not to use your account for any other illegal activity. We may refuse any gambling transaction, whether lawful or not.

Transactions in your account are also subject to applicable clearinghouse and Federal Reserve rules and regulations. You will not use your account to send or receive a payment on behalf of anyone who is not a U.S. citizen or resident using The Clearing House Association's Real-Time Payment network.

You agree that you are responsible for your tax obligations and any funds in, or to be deposited in, your accounts are not proceeds from any criminal activity (including, but not limited to, tax crimes). Funds in, and in any income derived from, your accounts will be disclosed to the relevant tax authorities, if required by law. All information that has been provided is complete and accurate, including any information pertaining to your country of citizenship, residence, principal place of business and any other relevant information to determine legal and tax status. You agree to notify us and/or provide us with any changes related to your tax affairs as we may request in order to comply with our regulatory obligations.

### G. Death or Incompetence of Account Owner or Sole Signer

Tell us immediately if any account owner dies or is declared incompetent by a court. We may act as if all owners are alive and competent until we receive notice otherwise.

After we receive notice of death or incompetence, we may freeze your balance, refuse to accept transactions, and reverse or return deposits. We are also not required to release your funds until we receive any documents we reasonably request to verify your death or incompetence, as well as who is entitled to the funds. If you die while residing outside the United States, we may require a personal representative to be appointed by a court in a United States jurisdiction. If we have any tax liability because of paying your balance to your estate, the estate will be responsible for repaying us the amount of that tax. If an account owner authorizes any transaction, but it's not presented for payment until after that owner dies, we are authorized to pay the transaction. If you owe us a debt at the time of your death, we are permitted to exercise our right of setoff (our right to apply funds in one account to the debt associated with another account) or security interest rights against the funds credited to your balance after your death. We have these rights even if a surviving joint owner, a "payable on death" payee, or a beneficiary of an "in trust for" or "trustee for" account has rights to the account.

After we receive notice of death or incompetence of the sole signer on a business organization's account, we may freeze the balance, refuse to accept transactions, and reverse or return deposits. We are also not required to release the organization's funds until we receive any documents we reasonably request to verify the death or incompetence of the signer and to establish a new person's authority to act on behalf of the organization in transacting on or closing the organization's account.

### H. Adverse Claims

If there are conflicting instructions or there is any dispute regarding your account, we may take any action, including refusing to disburse any funds in the account to any person until all persons claiming an interest consent in writing to a resolution of the dispute; or a court of proper jurisdiction authorizes or directs the payment; or the person with a conflicting claim withdraws his or her claim in writing. We may also place funds in a court (this is called an interpleader action) for resolution. If any person notifies us of a dispute, we do not have to decide if the dispute has merit before we take further action. We may take these actions without any liability and without advance notice, unless the law says otherwise.

### I. Authorization to Share Information

You authorize us to share information about you and your account with affiliates and third parties, unless the law or our Privacy Notice prohibits us from doing so. Please see our *Privacy Notice* for your choices about information sharing.

### J. Disputing Information Reported to a Consumer Reporting Agency

If you believe that we have reported inaccurate or incomplete information about your account to a consumer reporting agency, you have the right to file a dispute with that consumer reporting agency. You may also submit a dispute directly to us by writing to the address in the *How to Contact Us* section. Provide your name, address and phone number; the account number; the specific information you are disputing; an explanation of why it is inaccurate or incomplete; and any supporting documentation.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2024 JPMorgan Chase & Co.
Return to Table of Contents
Page 23 of 29
Effective 8/12/2024

### K. Legal Process and Requests for Information

"Legal Process" means any document that appears to have the force of law regarding restricting, holding or paying out funds from your account, including a garnishment, attachment, execution, levy or similar order. You acknowledge and agree that Legal Process served on us may instruct us to take certain actions with respect to your account, which may create potential liability or other risks to us if we fail to take any action directed by the Legal Process.

You agree that it is your responsibility to consult with an attorney and/or to initiate, or participate in, legal proceedings related to the Legal Process if you do not believe that the Legal Process is valid; otherwise dispute any issue related to the Legal Process, and/or seek to claim any additional exemption of funds related to the Legal Process not otherwise applied by us. You further agree that we will have no obligation to initiate any legal proceedings, or seek clarification, of any kind regarding any issue related to Legal Process. If you fail to properly seek or obtain judicial relief related to Legal Process within the deadlines provided for in the Legal Process or by applicable law, you acknowledge and agree that we will continue to comply with the Legal Process, including paying out all funds as directed by the Legal Process. We do not have to determine whether the legal process was validly issued or enforceable; and we will have no liability for any action we take as directed by the Legal Process or otherwise permitted by this agreement.

If a hold is in effect, we will continue to charge any applicable fees even though the account cannot be closed. We also may remove your Overdraft Protection if a hold is placed, but you may ask us to relink your accounts after the hold is removed. As permitted by law, we will deduct from your balance a Legal Processing Fee or costs and expenses we incur in complying with the order, or both.

You will be liable to us for any loss, cost or expense (including attorneys' fees that we incur) resulting from our compliance with any Legal Process or any related litigation.

### L. Abandoned Property

If any of your accounts are closed, we will return any balance, less any fees, claims, setoffs or other amounts if the balance is greater than $1, and we may transfer this balance from the closed account to any other open account with at least one common owner. Funds that cannot be returned or transferred may be considered abandoned under state law, and each state has laws that govern when we are required to send a customer's funds to the state.

### M. English Language – Other Language Preferences

The terms of this agreement and the products and services we provide are governed by the English language. As a courtesy, we make some of our forms, disclosures and documents, including this agreement, available in languages other than English. However, many important bank documents, and some products and services related to this account, are provided only in English. If there is any difference in meaning between the English and non-English version of any of our documents, the English version applies and is available upon request.

### N. Referrals

If you request it, our employees may at times provide contact information about third parties, such as lawyers, accountants, or contractors who offer products or services to the public. Some of these third parties may be our customers. We provide this information only as a courtesy and convenience to you and the third party, but in some cases we may be compensated for a referral. We do not make any warranties or representations about the third parties or their products or services. If you choose to do business with any third party, that decision is yours alone, and we are not responsible for the third party's performance or to help resolve any dispute between you and the third party. Our employees may also receive compensation when you purchase a Chase product based on their referral.

### O. Special Provisions for Pass-Through Accounts

If you have opened a deposit account on behalf of the beneficial owner(s) of the funds in the account (for example as a trustee, agent, nominee, guardian, executor, custodian or funds held in some other capacity for the benefit of others), those beneficial owners may be eligible for "pass-through" insurance from the FDIC. This means the account could qualify for more than the standard maximum deposit insurance amount (currently $250,000 per depositor in the same ownership capacity). If the account has transactional features, you as the account holder must be able to provide a record of the interests of the beneficial owner(s) in accordance with the FDIC's requirements as specified below. The FDIC has published a guide that describes the process to follow and the information you will need to provide in the event Chase fails. That information can be accessed on the FDIC's website at www.fdic.gov/deposit/deposits/brokers/part-370-appendix.html.

In addition, the FDIC published an Addendum to the guide, section VIII, which is a good resource to understand the FDIC's alternative recordkeeping requirements for pass-through insurance. The Addendum sets forth the expectations of the FDIC for pass-through insurance coverage of any deposit accounts, including those with transactional features. The Addendum will provide information regarding the records you keep on the beneficial owners of the funds, identifying information for those owners, and the format in which to provide the records to the FDIC upon bank failure. You must be able to provide this information in a timely manner in order to receive payment for the insured amount of pass-through deposit insurance coverage as soon as possible. You will have an opportunity to validate the capability to deliver the required information in the appropriate format so that a timely calculation of deposit insurance coverage can be made; further instructions relating to this opportunity will be communicated at a later time.

You agree to cooperate fully with us and the FDIC in connection with determining the insured status of funds in such accounts at any time. In the event of a bank failure, you agree to provide the FDIC with the information described above in the required format within 24 hours of a bank failure. As soon as a receiver is appointed, a hold will be placed on your account and that hold will not be released until the FDIC determines that you have provided the necessary data to enable the FDIC to calculate the deposit insurance. You understand and agree that your failure to provide the necessary data to the FDIC may result in a delay in receipt of insured funds and may result in legal claims against you from the beneficial owners of the funds in the account. If you do not provide the required data, your account may be held or frozen until the information is received, which will cause a delay when the beneficial owners could receive funds. Despite other provisions in this agreement, this section survives after a receiver is appointed for us, and the FDIC is considered a third party beneficiary of this section.

### P. Sub-accounts

For accounting purposes, all checking accounts consist of two sub-accounts: 1) a transaction sub-account where all deposits, withdrawals and fees are posted, and 2) a savings holding sub-account, where balances above a certain level are transferred daily. Funds will be retransferred to your transaction sub-account to meet your transactional needs; however, all balances in the holding sub-account will be transferred to the transaction sub-account with the sixth transfer in any calendar month or monthly statement period.

Both sub-accounts are treated as a single account for purposes of your deposits and withdrawals, earning interest, access and information, tax reporting, fees, etc.

### Q. Permitted Time for Filing a Lawsuit

You must file any lawsuit or arbitration against us within two years after the cause of action arises, unless federal or state law or an applicable agreement provides for a shorter time. This limit is in addition to limits on notice as a condition to making a claim. If applicable state law does not permit contractual shortening of the time during which a lawsuit must be filed to a period as short as two years, you and we agree to the shortest permitted time under that state's laws.

We abide by federal and applicable state record retention laws and may dispose of any records that we retained or preserved for the period set forth in these laws. Any action against us must be brought within the period that the law requires us to preserve records, unless applicable law or this agreement provides a shorter limitation period. Any action against us on an automatically renewable CD must be brought within the time that the law requires us to preserve records based on the stated maturity date in the most recent record of the CD.

### R. Location of Legal Proceedings

If you file any lawsuit or other legal proceeding against us that is connected in any way to your accounts or services, you agree to do so in an appropriate court in the state where your account is located. If we file any lawsuit or legal proceeding that is connected in any way to your accounts or services, you consent to jurisdiction and venue in an appropriate court in the state where your account is located. If either party chooses to have disputes resolved by arbitration, the section *Arbitration; Resolving Disputes* governs the process and location of the arbitration proceedings.

### S. Pre-judgment Interest Rate

If either you or we are awarded a judgment against the other in connection with your account, the rate of interest earned before judgment on the judgment amount will be the rate of interest the account earned during that period unless state law requires a different rate. If the account is not interest-bearing, the rate will be the lowest generally available rate for a personal interest-bearing checking account.

### T. Assignment of Agreement and Successors

This agreement will be binding on your personal representative, executors, administrators and successors, and on our successors and assigns.

You may not assign, transfer or grant a security interest in your account to anyone other than us without our written consent. No assignment will be valid or binding on us, and we will not be considered to have knowledge of it, until we consent and note the assignment in our records. However, by noting the assignment, we do not have any responsibility to assure that the assignment is valid. Any permitted assignment of your account is subject to our setoff rights.

### U. No Waiver

If we fail to exercise any right, that does not mean that we waive that right or any other right, and we may still enforce all of our rights in the future.

### V. Employee Retirement Income Security Act (ERISA)

You agree that any account you opened on or after July 1, 2013, is not a qualified employer-sponsored retirement or welfare benefit plan and:

   I.   The assets in the account are not part of a pension, profit sharing or other employee benefit plan subject to ERISA (each, an "ERISA Plan"), or any other substantially similar state, local or foreign law,

   II.  The assets in the account are not part of any entity whose underlying assets include "Plan assets" by reason of any ERISA Plan's investment in the entity, or

   III. You are not investing "Plan assets" of any ERISA Plan into any such account.

We may request additional information in connection with this representation.

## *X. Arbitration; Resolving Disputes*

You and we agree that upon the election of either of us, any claims or disputes (as defined below) will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).

This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL, AND YOU AND WE ARE ALSO WAIVING ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS, REPRESENTATIVE, OR CONSOLIDATED PROCEEDING, WHETHER IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

### What claims or disputes are subject to arbitration?

Claims or disputes between you and us about your deposit account, transactions involving your deposit account, and any related service or agreement with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the denial, approval or establishment of your account are included. Claims or disputes are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

### Can I (customer) cancel or opt out of this agreement to arbitrate?

You have the right to opt out of this agreement to arbitrate if you tell us within sixty (60) days of opening your account. Requests to opt out of this agreement that are made more than sixty (60) days after opening your account are invalid. If you already have pending litigation or arbitration against/with us when you open an account, any request to opt out of this arbitration clause will not apply to that litigation or arbitration. If you want to opt out, call us at 1-800-935-9935. Otherwise this agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy. Opting out of this agreement to arbitrate will not affect the other provisions of this agreement. If you validly opt out of this agreement to arbitrate, your decision to opt out will apply only to this arbitration agreement and not any other arbitration agreement.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2024 JPMorgan Chase & Co.

Return to Table of Contents

Page 25 of 29
Effective 8/12/2024

**What about class actions or representative actions?**

Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:

1. SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION, PRIVATE ATTORNEY GENERAL PROCEEDING, OR OTHER REPRESENTATIVE PROCEEDING;

2. SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING DIFFERENT CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS WE AGREE;

3. BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR

4. SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION, INCLUDING BUT NOT LIMITED TO PUBLIC INJUNCTIVE RELIEF.

Any question regarding the enforceability or interpretation of this section ("**What about class actions or representative actions?**") shall be decided by a court and not the arbitrator. If a court determines that any of the terms of this section are legally unenforceable for any reason with respect to a Claim or request for relief sought in connection with a Claim, then you and we agree that the arbitration and litigation shall proceed as follows: (1) all Claims or requests for relief for which arbitration is legally enforceable must be filed and adjudicated in arbitration; (2) any Claims or requests for relief for which arbitration is not legally enforceable will be decided through litigation in court; (3) any Claims or requests for relief that are to be decided through litigation in court will be stayed pending completion of the arbitration of all other Claims or requests for relief; and (4) when litigation in court resumes, the Court may consider but will not be bound by any determination made by the arbitrator. By way of example, if a Claim seeks both public injunctive relief and other relief, and the prohibition on an award of public injunctive relief is found to be unenforceable, then the request for public injunctive relief will be decided in litigation in court after Claims seeking other relief had been adjudicated in arbitration on an individual basis. For the avoidance of doubt, no arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

**Does arbitration apply to Claims involving third parties?**

Arbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration. No award or relief will be granted by the arbitrator except on behalf of, or against, a named party. For purposes of arbitration, "you" includes any person who is listed on your account, and "we" includes JPMorgan Chase Bank, N.A., all its affiliates, and all third parties who are regarded as agents or representatives of ours in connection with a Claim. (If we assign your account to an unaffiliated third party, then "we" includes that third party.) The arbitration may not be consolidated with any other arbitration proceeding.

**How does arbitration work?**

The party filing a Claim in arbitration must select JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its rules and procedures in effect at the time the arbitration is commenced. If there is a conflict between the applicable rules and procedures and this arbitration agreement and/or this agreement, this arbitration agreement and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The arbitrator will decide the Claim in accordance with all applicable law and consistent with the FAA. A single arbitrator will conduct the arbitration and will apply applicable substantive law, including the Uniform Commercial Code, statutes of limitation, conditions precedent to suit, and recognized principles of equity, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or relief as permitted by the law and the agreement between you and us (including the limitations set forth above).

**Is the arbitrator's decision final? Is there an appeal process?**

The arbitration ruling will be considered final and binding, and enforceable by any court having jurisdiction. No party may seek an appeal of the arbitration ruling, except as provided under the FAA.

**Who will pay for costs?**

Unless the arbitration administrator waives your initial filing fee to commence arbitration, you are obligated to pay that fee but, if a settlement is reached between you and us prior to the hearing, we will reimburse you for up to $500 for filing fees as part of the negotiated terms of the settlement. If a settlement is not reached prior to the hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of any hearing. If you are the prevailing party in the arbitration, we will reimburse you for any fees you paid to the arbitration organization and/or arbitrator. Except as provided above, all other fees will be allocated between you and us according to the arbitration administrator's rules and applicable law.

**How do I (customer) file an arbitration claim?**

Rules and forms may be obtained from, and Claims may be filed with, JAMS (www.jamsadr.com) or the AAA (www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

**Effective November 17, 2024, section *X. Arbitration; Resolving Disputes* will be replaced in its entirety with the following language:**

# *Arbitration; Resolving Disputes*

You and we agree that upon the election of either of us, any claims or disputes will be resolved by binding arbitration as defined and discussed below, and not through litigation in any court (except for matters in small claims court).

This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") with respect to both substance and procedure.

YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE. UNLESS YOU OPT OUT OF ARBITRATION IN THE MANNER DESCRIBED BELOW, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL, AND YOU AND WE ARE ALSO WAIVING ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS, REPRESENTATIVE, OR CONSOLIDATED PROCEEDING, WHETHER IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.

### What claims or disputes are subject to arbitration?

Claims or disputed factual or legal issues between you and us that arise out of or relate in any way to any aspect of our relationship, interactions, or dealings with each other, including but not limited to your deposit account, transactions involving your deposit account, whether actual, potential, canceled, or other transactions, any product, service, or agreement with us, or interactions of any kind with Chase employees or agents are subject to arbitration. Additionally, any claims or disputed factual or legal issue arising from or relating in any way to this agreement, any prior account agreement between us, the advertising of our products, or the application for, or the denial, approval or establishment of your account are included. Claims or disputed factual or legal issues that fall within the scope of this arbitration provision are subject to arbitration, regardless of what legal claim or theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputed factual or legal issues, whether they arose in the past, may currently exist, or may arise in the future. All such claims or disputed factual or legal issues are referred to in this section as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

Any disputes regarding whether any Claim is subject to arbitration and/or the scope of this arbitration provision shall be decided by a court, not the arbitrator.

### Can I (customer) cancel or opt out of this agreement to arbitrate?

You have the right to opt out of this agreement to arbitrate if you tell us within sixty (60) days of opening your account or by January 16, 2025, whichever is later. If you want to opt out, the exclusive way to do so is by calling us at 1-800-935-9935. Any other method, form, or means of opting out shall be treated as being invalid or ineffective. Requests to opt out of this agreement that are made more than sixty (60) days after opening your account or by January 16, 2025, whichever is later, also are invalid. If you already have pending litigation or arbitration against/with us when you open an account, any request to opt out of this arbitration clause will not apply to that litigation or arbitration. This agreement to arbitrate will apply without limitation, regardless of whether 1) your account is closed; 2) you pay us in full any outstanding debt you owe; or 3) you file for bankruptcy. Opting out of this agreement to arbitrate will not affect the other provisions of this agreement. If you validly opt out of this agreement to arbitrate, your decision to opt out will apply only to this arbitration agreement and not any other arbitration agreement or any accounts for which the opt out period has already passed.

### Are class actions or representative actions allowed to proceed in arbitration proceedings?

No.

Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:

1. SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION, PRIVATE ATTORNEY GENERAL PROCEEDING, OR OTHER REPRESENTATIVE OR CONSOLIDATED PROCEEDING;

2. BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR

3. SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION, INCLUDING BUT NOT LIMITED TO PUBLIC INJUNCTIVE RELIEF. FOR THE AVOIDANCE OF DOUBT, IF SUCH A CLAIM IS MADE, THE ARBITRATOR IS PROHIBITED FROM GRANTING THE REQUESTED RELIEF.

Any question regarding the enforceability or interpretation of this section ("Are class action or representative proceedings allowed to proceed in arbitration proceedings?") shall be decided by a court and not the arbitrator. If a court determines that any of the terms of this section are legally unenforceable for any reason with respect to a Claim or request for relief sought in connection with a Claim, then you and we agree that the arbitration and litigation shall proceed as follows: (1) all Claims or requests for relief for which arbitration is legally enforceable must be filed and adjudicated in arbitration; (2) any Claims or requests for relief for which arbitration is not legally enforceable will be decided through litigation in court; (3) any Claims or requests for relief that are to be decided through litigation in court will be stayed pending completion of the arbitration of all other Claims or requests for relief; and (4) when litigation in court resumes, the Court will not be bound by any determination made by the arbitrator. By way of example, if a Claim seeks both public injunctive relief and other relief, and the prohibition on an award of public injunctive relief is found to be unenforceable, then the request for public injunctive relief will be decided in litigation in court after Claims seeking other relief had been adjudicated in arbitration on an individual basis. For the avoidance of doubt, no arbitrator shall have authority to entertain any Claim on behalf of a person who is not a named party, nor shall any arbitrator have authority to make any award for the benefit of, or against, any person who is not a named party.

### Does arbitration apply to Claims involving third parties?

Arbitration applies whenever there is a Claim between you and us. If a third party is also involved in a Claim between you and us, then the Claim will be decided with respect to the third party in arbitration as well, and it must be named as a party in accordance with the rules of procedure governing the arbitration. No award or relief will be granted by the arbitrator except on behalf of, or against, a named party. For purposes of arbitration, "you" includes any person who is listed on your account or claims a right or interest in your account, and "we" and "us" includes JPMorgan Chase Bank, N.A., all its affiliates, third-party beneficiaries of this agreement and all third parties who are regarded as agents or representatives of ours in connection with a Claim. (If we assign your account to an unaffiliated third party, then "we" includes that third party.) The arbitration may not be consolidated with any other arbitration proceeding.

DEPOSIT ACCOUNT AGREEMENT
JPMorgan Chase Bank, N.A. Member FDIC
© 2024 JPMorgan Chase & Co.

## How does arbitration work?

Arbitrations between us shall be administered by the American Arbitration Association ("AAA"). AAA shall apply its Consumer Arbitration Rules in effect at the time the arbitration is commenced and the Mass Arbitration Supplementary Rules to mass arbitration matters including the additional rules explained below ("What about mass arbitration matters?"). (The Consumer Arbitration Rules are currently available at https://www.adr.org/sites/default/files/Consumer%20Rules.pdf, and the Mass Arbitration Supplementary Rules are currently available at https://www.adr.org/sites/default/files/Mass_Arbitration_Supplementary_Rules.pdf). A single arbitrator shall conduct proceedings under the Consumer Arbitration Rules, and a Process Arbitrator and single Merits Arbitrator shall conduct each mass arbitration case. If there is a conflict between the applicable AAA rules and procedures and this arbitration agreement and/or this agreement, this arbitration agreement and this agreement will control. In the event that AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure.

The Parties agree that, upon motion by either of us, any arbitrator shall have the power to decide dispositive issues of law prior to hearing, consistent with Federal Rules of Civil Procedure 12 and 56, and will decide the Claim in accordance with all applicable substantive law, including the Uniform Commercial Code, statutes of limitation, whether you have completed the steps necessary to initiate the suit, and recognized principles of equity, and will honor all claims of privilege recognized by law. The arbitrator will have the power to award to a party any damages or relief as permitted by the law and the agreement between you and us (including the limitations set forth above). All pleadings, information and documents exchanged, and the arbitrator's ruling shall be treated as confidential and have no precedential value. However, if either Party seeks to confirm the arbitrator's decision in court, the Parties agree that the documents necessary for such confirmation need not be filed under seal.

## Is the arbitrator's decision final? Is there an appeal process?

The arbitration ruling will be considered final and binding, and enforceable by any court having jurisdiction. No party may seek an appeal of the arbitration ruling, except as provided under the FAA.

## Who will pay for costs?

Each Party will be responsible for the arbitration costs as allocated by the applicable AAA rules (www.adr.org). However, except for claims filed as part of a mass arbitration, if the arbitrator ultimately rules in your favor, you will be entitled to reimbursement by Chase for all fees you paid to the AAA.

## How do I (customer) file an arbitration claim?

Rules and forms may be obtained from, and Claims may be filed with, the AAA (www.adr.org). Arbitration hearings will take place in the federal judicial district that includes your address at the time the Claim is filed, unless the parties agree to a different place.

## What about mass arbitration matters?

You agree that these additional requirements ("Mass Arbitration Procedures") shall apply to your Claim if it is filed as part of a "mass arbitration," which means twenty-five (25) or more arbitration claims involving the same or similar subject matter and/or issues of law or fact, and where representation of all claimants is the same or coordinated across the cases. You understand and agree that these procedures related to mass arbitrations will apply and that they are designed to (a) lead to the streamlined and cost-effective resolution of claims; (b) ensure that large volume filings do not impose unnecessary burdens or impediments to the resolution and cost-effective adjudication of your Claim and similar claims; and (c) preserve the integrity of the arbitration process. **You agree to these procedures even though they may delay the arbitration of your individual claim. If at any point you are unsatisfied with the speed by which your matter is proceeding, you are free to withdraw your arbitration demand and proceed in small claims court if the Claim is in that court's jurisdiction and proceeds on an individual basis.**

1. **Mass Arbitration Filing Requirements:** In addition to the requirements set forth in the AAA Mass Arbitration Supplementary Rules, you agree that upon commencing a case with the AAA, you will provide your name, full Chase account number, mailing address, telephone number, email address, a factual description of every disputed transaction for which you seek compensation (date, amount, and transaction type) and/or event (date, location, and individuals involved), explanation of the basis of your Claim, an itemized calculation of all alleged damages, and, if represented by counsel, a signed statement authorizing us to share information regarding your account and the Claim with them. You agree and understand that failure to provide this information may result in dismissal of your Claim, though you have the right to refile once you provide the information described in the previous sentence.

2. **Process Arbitrator Appointment:** You and Chase agree that before an arbitrator is assigned to determine the merit of your claim, a "Process Arbitrator" will be appointed. The Process Arbitrator will have the authority to ensure these Mass Arbitration Procedures and the AAA rules are followed. The Parties agree that the Process Arbitrator will be selected by the process set forth in AAA Mass Arbitration Supplementary Rule MA-7(a). In short, each Party will receive a list of proposed Process Arbitrators provided by the AAA and will meet and confer to identify a mutually-agreeable candidate. If the Parties cannot agree, they will submit their preferences to the AAA, and the AAA will select a Process Arbitrator.

3. **Matters To Be Decided by a Process Arbitrator:** In addition to the authority outlined in AAA Mass Arbitration Supplementary Rules, the parties agree that the Process Arbitrator shall be empowered to resolve any dispute regarding whether your Claim should be dismissed because, for example, you failed to comply with the Mass Arbitration Filing Requirements, any other requirements outlined in this agreement, or any other reason. You agree that if the Process Arbitrator finds you failed to comply with any requirement, your claim will be dismissed, without prejudice to refiling once the deficiencies are remedied. The Process Arbitrator will also have the power to decide whether, based on the information submitted in the Mass Arbitration Filing Requirements, other threshold eligibility issues for your case to proceed, including but not limited to whether you had an account at Chase, experienced the transaction, fee, or event at issue, or otherwise cannot pursue the claim due to a clear legal or factual deficiency, and to dismiss your claim as appropriate. The Process Arbitrator shall have the power to determine whether or not a given dispute regarding these Mass Arbitration Filing Requirements and/or Procedures are within their jurisdiction. The Process Arbitrator shall be authorized to afford any relief or impose any sanctions available under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, or any applicable state law.

4. **Mass Arbitration Procedures:** Following the resolution of any disputes within the jurisdiction of the Process Arbitrator, if any, counsel for the claimants and counsel for Chase shall each select fifteen (15) cases (per side) to proceed first in individual arbitration proceedings on the merits of each claim. Unless the Parties otherwise agree, in no event shall any individual Merits Arbitrator be assigned more than three (3) cases. No AAA per case fee shall be assessed in connection with any case until they are selected to proceed to individual arbitration proceedings as part of the process identified in this section. The Parties agree that each side shall have the right to have fifteen (15) cases of their choosing proceed to final hearing before the process described in this section moves forward. After the first thirty (30) cases are resolved, counsel will meet and confer regarding ways to improve the efficiency of the proceedings, including whether to mediate or change the number of cases filed in each stage. If the Parties are unable to resolve the remaining cases after the conclusion of the initial thirty (30) proceedings and conferring in good faith, each side shall select another fifteen (15) cases (per side) to proceed to individual arbitration proceedings. Each of these thirty (30) cases shall be assigned to a different Merits Arbitrator, though if the Parties otherwise agree, a single Merits Arbitrator may be assigned up to three (3) cases. No AAA per case fee shall be assessed in connection with the remaining cases until they are selected to proceed to individual arbitration proceedings as part of the process identified in this section. After this second set of thirty (30) cases are resolved, counsel will again meet and confer regarding ways to improve the efficiency of the proceedings, including whether to mediate or change the number of cases filed in each stage. If the Parties do not reach a global resolution after the second set of cases are resolved, on either Party's motion, the Process Arbitrator can decide to expedite the proceedings by forgoing more rounds of case selection and instead assigning Merits Arbitrators to all of the remaining cases at once. If no motion is made, this Mass Arbitration Procedure shall continue with thirty (30) cases in each set of proceedings, consistent with the parameters identified above. You and Chase agree to engage in these Mass Arbitration Procedures in good faith, which includes an agreement to pay the Parties' respective case fee if your case is selected. Any dispute regarding any aspect of the specific Mass Arbitration Procedures outlined in this section shall be resolved by the Process Arbitrator.

5. **Interpretation and Enforcement of Mass Arbitration Provision:** Any dispute regarding the interpretation or enforcement of these mass arbitration procedures shall be decided by the Process Arbitrator or, in cases that have been released to merits proceedings, the Merits Arbitrator. Their decisions regarding the mass arbitrations process and procedures shall be considered interlocutory in nature and not subject to immediate judicial review. If any terms of these Mass Arbitration Procedures are found to be legally unenforceable for any reason, then the proceedings shall otherwise continue in arbitration in accordance with AAA's Mass Arbitration Supplementary rules.

## *Privacy Notice*

# CHASE ◆

Rev. April 2021

| Facts | What does Chase do with your personal information? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• account balances and transaction history<br>• credit history and payment history |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Chase chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Chase share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes – to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes – information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes – information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | Yes | Yes |

| To limit our sharing |
|---|
| • Call 1-888-868-8618 – our menu will prompt you through your choice(s). We accept operator relay calls.<br>• Visit us online: chase.com/privacypreferences<br>Please note: If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice. However, you can contact us at any time to limit our sharing. |

| Questions |
|---|
| Call 1-888-868-8618 – our menu will prompt you through your choice(s). We accept operator relay calls. |

PAGE 2

| Who we are | |
| --- | --- |
| Who is providing this notice? | The U.S. consumer financial companies within the JPMorgan Chase & Co. family, including JPMorgan Chase Bank, N.A., Chase Insurance Agency, Inc., and J.P. Morgan Securities LLC. |

| What we do | |
| --- | --- |
| How does Chase protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We authorize our employees to get your information only when they need it to do their work, and we require companies that work for us to protect your information. |
| How does Chase collect my personal information? | We collect your personal information, for example, when you<br>• open an account or make deposits or withdrawals from your account<br>• pay your bills or apply for a loan<br>• use your credit or debit card<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes – information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account. |

| Definitions | |
| --- | --- |
| Affiliates | Companies related by common ownership or control. They can be financial and non financial companies.<br>• *Our affiliates include companies with a Chase or J.P. Morgan name and financial companies such as J.P. Morgan Securities LLC* |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and non financial companies.<br>• *Nonaffiliates we share with can include companies such as retailers, auto dealers, auto makers and membership clubs* |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *Our joint marketing partners include categories of companies such as insurance companies* |

| Other important information |
| --- |
| **VT:** Accounts with a Vermont mailing address are automatically treated as if they have limited the sharing as described on page 1. For joint marketing, we will only disclose your name, contact information and information about your transactions.<br>**NV:** We are providing you this notice pursuant to Nevada law. If you prefer not to receive marketing calls from us, you may be placed on our Internal Do Not Call List by calling 1-800-945-9470, or by writing to us at P.O. Box 734007, Dallas, TX 75373-4007.<br>For more information, contact us at the address above, or email Privacy.Info@JPMChase.com, with "Nevada Annual Notice" in the subject line. You may also contact the Nevada Attorney General's office: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; telephone number: 1-702-486-3132; email BCPINFO@ag.state.nv.us<br>**CA:** Accounts with a California mailing address are automatically treated as if they have limited the sharing with nonaffiliates as described on page 1. CA residents are provided a CA notice for additional choices. |

# EXHIBIT B



# ROMANO

## L A W

---

Uzoma@RomanoLaw.com        One Battery Park Plaza, 7th Floor        (212) 865-9848
New York, NY 10004

**WITHOUT PREJUDICE - ALL RIGHTS RESERVED**
**PRIVATE AND CONFIDENTIAL - FOR SETTLEMENT PURPOSES ONLY**

September 19, 2024

**VIA EMAIL** (executive.office@chase.com)

**AND FIRST-CLASS MAIL:**
JPMorgan Chase & Co
Attn: Executive Office
3415 Vision Drive
Columbus, OH 43219

Re:        **iMerchant Inc. ("Client")**
           **Case No. ECW240410-06344**

To Whom it May Concern,

Our firm represents Client in connection with the seizure of funds from its bank accounts, by JPMorgan Chase & Co. ("**Chase**" or "**You**").

**WE HEREBY DEMAND THE IMMEDIATE RELEASE AND RETURN OF ONE MILLION SIX HUNDRED AND SIXTY-NINE THOUSAND THREE HUNDRED AND THIRTY-FOUR DOLLARS AND SEVENTEEN CENTS ($1,669,334.17), PLUS APPLICABLE INTEREST (THE "FUNDS") TO OUR CLIENT**. Kindly note the appearance of counsel on this matter and henceforth deal directly with the undersigned counsel on this and any related matter.

Chase has arbitrarily seized the Funds without providing any reason. There are no legal orders related to Chase's action, nor does Chase have any legal basis or authority to justify a seizure. Chase has seized the Funds for over a year, and our Client has yet to receive any official documentation articulating the legal basis for seizure. This seizure also constitutes a breach of the Deposit Account Agreement (DAA) between our Client and Chase. We further demand that Chase provide its rationale for the seizure and the legal grounds supporting it.

Client is a FinTech processor specializing in receiving, processing, and transmitting value between contracting parties. It is the beneficial owner and bona fide purchaser for value of the seized Funds, as evidenced in our Client's August 22, 2024 email to Chase. Our Client here states and will swear

in court that it had no knowledge of any alleged unlawful conduct regarding the Funds, and that the Funds belong exclusively to our Client and no one else.  Any adverse claimant may appear in court to establish the claim, but Chase has no basis for an extra judiciary conversion of the Funds. Section H of the DAA "Adverse Claims" states in relevant part:

> If there are conflicting instructions or there is any dispute regarding your account, we may take any action, including refusing to disburse any funds in the account to any person until all persons claiming an interest consent in writing to a resolution of the dispute; or a court of proper jurisdiction authorizes or directs the payment; or the person with a conflicting claim withdraws his or her claim in writing. We may also place funds in a court… for resolution.

We demand that Chase respect the DAA, New York, and federal law by not disbursing the Funds without consent of our Client or court order.  Further, if Chase insists on giving away our Client's money to another party, we demand that you provide the date thereof so that we may file for an injunction against Chase in court.  If you claim a right to give Client's funds over to a third party other than the U.S. government, please provide Chase's support for doing so.

As we contemplate what rights our Client may have in seeking redress in the courts and from regulators, *we demand that you release the funds within five (5) days of the date of this letter* to our custody at:

**Romano Law PLLC**
**Attn: Uzoma Alexander Eze IOLTA**
**One Battery Park Plaza, Floor 7**
**New York, NY 10004**

In the alternative, formally seize the funds, transfer them over into the custody of the Department of Justice, Secret Service, or other federal authority and provide due notice to our attention so that our Client can file a claim challenging this seizure in court or other administrative fora.

Note that this is both a claim and a demand.  Our Client will pursue legal remedies if Chase does not comply, and we request that Chase escalate this matter accordingly.  Please be advised that we have filed complaints on Chase's conduct in this matter to both the New York State Department of Financial Services (Case ID BKC-2024-01612162) and the Office of Comptroller of the Currency (Case ID pending).

This letter is written in good faith and without prejudice to our Client's procedural and substantive rights, claims, and defenses, all of which our Client expressly reserves.  This letter does not constitute, nor is it intended to be, a complete statement of our Client's rights, privileges, and claims.  This letter does not, in any manner, waive, affect, or impair any of our Client's remedies or defenses.

*Inasmuch as litigation is anticipated, Chase, as well as its current and former employees and third-party vendors as applicable, are required to preserve and safe-keep all documents and information relating in any way to this matter, Chase's dealings with our Client and related third parties, and*

PRIVATE AND CONFIDENTIAL
FOR SETTLEMENT PURPOSES ONLY

*any information relating to any potential claims our Client may have, whether in electronic or any other format. The failure to take adequate steps to preserve evidence, including electronic and third-party evidence, could result in sanctions being imposed by a court and claims for spoliation of evidence.*

Thank you for your prompt attention to this matter. Please direct all future communications regarding this matter, whether oral or written, to my attention.

Sincerely,

ROMANO LAW PLLC

/s/ _____

Uzoma Alexander Eze, Esq.

cc:  Danielle Yurkew, Esq. (danielle@romanolaw.com)
     Erick Avalos (erick@metaprisebanking.com)
     Edon Jakpuaj (edon@metaprisebanking.com)